### In re LOWMAN.

### LOWMAN v. FEDERAL LAND BANK OF LOUISVILLE.
### No. 6972.

Circuit Court of Appeals, Seventh Circuit.
Nov. 9, 1939.

Rehearing Denied Dec. 8, 1939.

Samuel E. Cook, of Huntington, Ind., for appellant.

William C. Goodwyn, J. F. Williamson, and John S. Grimes, all of Louisville, Ky.

(Bowser & Bowser, of Warsaw, Ind., of counsel), for appellee Federal Land Bank of Louisville.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from an order of the District Court of the United States for the Northern District of Indiana directing a public sale of the real estate and non-exempt personal property of the debtor-appellant. The debtor petitioned the District Court for leave to repurchase certain real estate owned by his estate and mortgaged to the creditor-appellee at the value fixed by the appraisers in the bankruptcy proceedings, the value being approximately 50% of the mortgage debt. The creditor-appellee, the holder and owner of the mortgage debt, filed its answer to the petition, in which answer the creditor objected to the debtor's being allowed to redeem the land at the appraised value and requested that the court order the property sold at public auction and allow the creditor to bid at said auction the amount of its mortgage debt. Certain facts were stipulated upon the basis of which the District Court made its finding of facts.

The court found that the debtor had the financial ability and funds necessary to redeem the land at its then present value; and the court having heard evidence found that the value of the land was $1800. Also, the court found that "all the means of the debtor is the appraised value of the land and that he has no other property or mode of income to enable him to pay for the land more than $1800, and that the debtor is unable to pay the entire amount of the mortgage debt and cannot rehabilitate himself unless he can repurchase the real estate at the figure of $1800."

The questions of law presented in this appeal are summarized by the District Court as follows:

"1. The law is with the Creditor.

"2. The petition of the Debtor to repurchase the real estate for $1,800.00 should be denied and the petition of the Creditor that the land be sold at public auction, and that the Creditor be allowed to bid at the sale its debt, plus taxes and Court costs should be allowed.

"3. That the Debtor does not have the absolute right to repurchase the real estate at the appraised value, but that upon the request of the secured creditor the real estate must be sold at public auction to the highest bidder.

"4. That the Act of March 4, 1938, does not extend a moratorium under subsection s, but merely extends the time within which petitions may be filed under subsections A to R.

"5. That the moratorium under subsection s should be terminated in this cause because the Debtor cannot rehabilitate himself within the time provided for under section 75, a Trustee should be appointed and the real estate and non-exempt personal property should be advertised and sold at public sale to the highest bidder without restraint or limit upon the maximum or minimum bid, free and clear of liens.

"6. That the debtor be allowed 90 days in which to redeem from the sale."

On the basis of its conclusions of law the District Court ordered and decreed that the moratorium entered in the cause be terminated and further ordered and decreed as follows:

"And this case is referred to the Conciliation Commissioner with directions to secure the appointment of a Trustee, the Trustee to offer for sale the real estate and the non-exempt personal property of the Debtor at public sale, said real estate to be conveyed to the highest bidder, at the sale, without relief from valuation and appraisement laws, free and clear of all liens and encumbrances thereon and the Trustee is further authorized and directed to execute to the purchaser a Warranty Deed therefor."

The case of debtor-appellant reduces itself to two propositions:

1. Does a debtor, proceeding under subsection s, Section 75, Chapter 8, of the Bankruptcy Act,[1] as amended August 28, 1935, have an absolute right to obtain his property, free and clear of encumbrances, by paying into court the appraised or reappraised value, in accordance with the provisions of Section 75, sub. s, Paragraph (3), despite a request in writing by a secured creditor for a sale at public auction of the property on which such creditor has a lien?

2. Did the act of March 4, 1938, 11 U.S.C.A. § 203, sub. s(5), extend the three year stay until March 1, 1940?

[1] 11 U.S.C.A. § 203, sub. s, as amended.

In our opinion the second question must be answered in the negative. The enactment in question is an amendment to the provision of the original act which limited the time for the filing of petitions under the act to five years after March 3, 1933. By the act of March 4, 1938, that date is extended until March 4, 1940. We find no language in the latter act which can be construed as an enlargement of the three year period of stay.

As to the first question the debtor-appellant contends that he has an absolute right during, or at the close of the moratorium period, to purchase the property at its appraised value, and that no other disposition of the property may be made which would interfere with his right so to purchase. To sustain the foregoing contention it is necessary to find somewhere in the act some language which gives to the debtor the power to extinguish the secured creditor's interest in the security by paying into court the present appraised value of the security, and the right to receive full possession and title to the security, free and clear of encumbrances.

Subsections a to r of Section 75 provide the machinery through which compositions and extensions for distressed farmers may be facilitated and made effective. The purpose of subsections a to r is to encourage the securing of relief for distressed farmers by composition agreements, with or without extensions. Such composition agreements cannot be confirmed by a court unless they have been accepted in writing by a majority in number of all creditors whose claims have been allowed, including secured creditors whose claims are affected, which number shall represent a majority in amount of such claims.

The interests of creditors are protected under the composition and extension provisions by requiring any proposal to receive the approval of a majority in number of all creditors and in the amount of claims; and even with that approval any "extension and/or composition shall not reduce the amount of or impair the lien of any secured creditor below the fair and reasonable market value of the property securing any such lien * * *."[2] The relief provided for in subsection s is not predicated upon the assent of creditors; but is secured to the debtor by a grant of rights and privileges, the enjoyment of which is subject to certain conditions and qualifications, obviously intended to protect the interests of secured creditors and to meet the constitutional requirements stated in Louisville Joint Stock Land Bank v. Radford.[3]

Section 75, sub. s(1) provides that "All * * * existing mortgages, * * * shall remain in full force and effect, and the property covered by such mortgages, * * * shall be subject to the payment of the claims of the secured creditors, as their interests may appear." Paragraphs (1) and (2) provide for a stay of the mortgagee's remedies, paragraph (1) providing that " * .* * the referee * * * shall further order that the possession, under the supervision and control of the court, * * * shall remain in the debtor, as herein provided for, subject to all existing mortgages * * *." Paragraph (2) provides that " * * * the court shall stay all * * * proceedings in any court * * * against the debtor or any of his property, for a period of three years"; and that "during such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court * * *." It is apparent that the foregoing provisions affect only remedies of the mortgagee; the amount of the mortgage debt is not affected nor is there any indication of an intent to limit the right of the mortgagee eventually to subject the real estate to the full mortgage debt.

But despite the foregoing language, which preserves the mortgagee's full substantive rights under the mortgage, the debtor-appellant urges that the language of subsection s(3) must be construed to give him the absolute right to obtain his property free and clear of encumbrances by the payment of the appraised value, the appraised value of the land being stipulated to be $1800 and the amount of the mortgage debt approximately $3600. The language of paragraph (3), after providing for the payment into court of the original amount of the appraisal, or of a newly determined value, continues thus: " * * * and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances

---

2 11 U.S.C.A. § 203, sub. k.

3 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

to the debtor: Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this act [title]."

The language of paragraph (3) does not purport to grant to a debtor the right to require a reduction in mortgage indebtedness. It does provide a method by which the debtor may acquire the unqualified ownership of the land by paying into court the value of the land as shown by an appraisal. But the authorization of the method is immediately and obviously qualified by the proviso that upon request in writing by any secured creditor or creditors the court shall order the property upon which such secured creditors have a lien to be sold at public auction. That the foregoing protection was given to the creditor with the interest of the debtor in mind is made clear by the provision that the debtor have ninety days within which to redeem the property sold at such sale, but by paying the amount for which it was sold.

■ The foregoing construction is required by the Supreme Court's construction of the language of Section 75, sub. s in the opinion in Wright v. Vinton Branch.[4] It is clear from its discussion of the different provisions of the new Frazier-Lemke Act that the Supreme Court was of the opinion that the act preserved the right of the creditor to realize upon the security by judicial public sale. It was stated in the course of the opinion: "The new Act does not in terms provide for 'The right to protect its (the mortgagee's) interest in the property by bidding at such sale whenever held.' But the committee reports and the explanations given in Congress make it plain that the mortgagee was intended to have this right. We accept this view of the statute." The Supreme Court in the course of its opinion in the Wright case clearly construes the new act to preserve the secured creditor's right to realize upon the security by judicial public sale and the creditor's right to protect its interest in the property by bidding at such sale whenever held. It is also clear from the opinion of the court that the stay of three years is not absolute but is conditioned upon the debtor's performance of the duties which are placed upon him by the Act, or by the orders of the court made pursuant to the Act, and the opinion expressly states that certain language of the new Act "must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period." Also the Supreme Court recognized that under sub. s(3) the debtor could end the stay by paying into court the appraised or reappraised value of the land, and, thus, in the absence of a request by a secured creditor for a public sale, acquire full ownership of the land.[5]

■ In view of the foregoing we conclude that the District Court correctly concluded as a matter of law that the debtor did not have an absolute right to obtain clear ownership of the property for the amount of the appraised value. And since it is agreed as a fact that the debtor cannot rehabilitate himself unless he is permitted to repurchase the real estate at the appraised value, the court necessarily found that the debtor could not rehabilitate himself within the time provided under Section 75 of the Act; and, in accordance with the provisions of the Act, the court properly ordered a reference of the case to the Conciliation Commissioner with directions to secure the appointment of a trustee and directed that the trustee offer the property in question at public sale.

The order of the District Court is affirmed.

---

[4] 300 U.S. 440, 57 S.Ct. 556, 560, 81 L.Ed. 736, 112 A.L.R. 1455.

[5] See discussion and footnotes in Wright v. Vinton Branch, supra, 300 U. S., pages 457–463, 57 S.Ct. pages 559–562, 81 L.Ed. 736, 112 A.L.R. 1455.