## NALDER v. FEDERAL LAND BANK OF BERKELEY et al.

### No. 2555.

Circuit Court of Appeals, Tenth Circuit.

Oct. 21, 1942.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal involves a construction of Subsection s(3) of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s(3). Appellant, Hacel W. Nalder, filed his petition for relief under Section 75 of the Bankruptcy Act. Having failed to effect a settlement of his debts, he filed an amended petition March 3, 1939, under Subsection s. All his property was appraised at $10,445, and the rent he was ordered to pay was fixed at $950. June 10, 1941, he filed a petition for reappraisal under Subsection s(3). After hearing, an order was entered by the court directing that the property be reappraised by three appraisers, of whom the bankrupt should select one, the creditors another, and these two the third. The order provided that when so selected they should be appointed by the conciliation commissioner, and that the appraisement when made should be transmitted by the conciliation commissioner to the clerk of the court. The property was reappraised at $4,250. Appellee, a secured creditor, filed exceptions to the appraisement, asked that the reappraisement be set aside, and that a time be set for hearing to determine the value of the property. After a hearing, the court made findings of fact and conclusions of law. It fixed the value of the property at $6,000, and fixed the period during which appellant could redeem by paying the value thereof into court.

The court found that the appraisers did not know the fair and reasonable market value of the property and that in making their appraisal thereof they did not investigate or inquire as to the fair and reasonable market value of the land, and that without such knowledge they arbitrarily appraised the property at $4,250, whereas its true value was $6,000.

The precise question is whether an appraisal under Subsection s(3) made by appraisers appointed for that purpose is subject to review by the court. Appellant's position is that it is not; that when once made it may not be challenged by any party to the proceeding. Such a construction should not be adopted unless clearly required by the provisions of the Act, because it would tend to defeat that "full measure of the relief afforded by Congress." Wright v. Union Central Ins. Co., 311 U.S. 273,

J. D. Skeen, of Salt Lake City, Utah (E. J. Skeen, of Salt Lake City, Utah, on the brief), for appellant.

Richard W. Young, of Berkeley, Cal. (Richards & Mitchell, of Salt Lake City, Utah, on the brief), for appellees.

279, 61 S.Ct. 196, 200, 85 L.Ed. 184. The doctrine of the Wright case is that a liberal interpretation should be placed on ambiguous provisions of the Act to effectuate the broad and beneficent purpose of the Act. In the Wright case the debtor was claiming a right under an ambiguous provision of the Act. In construing the ambiguous provision in favor of the debtor, the court said:

"And so long as that right is protected [that is, the right to receive the value of the property] the creditor certainly is in no position to insist that doubts or ambiguities in the Act be resolved in its favor and against the debtor."

■ With equal force, it can be said that so long as the right of the debtor to redeem his property by paying into court its actual value is protected, he is in no position to complain, not that the ambiguity in Subsection s(3) be resolved against him, but that such a construction be placed on it as will protect his rights, as well as the rights of the creditors. The shoe might well be on the other foot. The arbitrary valuation might as well have been excessive, in which event the debtor would be denied a valuable right afforded him by the Act under the construction for which he is contending here.

■ Section 75 of the Bankruptcy Act was held constitutional on the ground, as was stated in the Wright case, supra, that "safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property."

If we hold that under Subsection s(3) a secured creditor may not challenge or ask a review of an arbitrary or fraudulent valuation or one arrived at by the use of fundamentally erroneous methods, and as a result is compelled to accept less than the fair value of the property, then Subsection s(3) does not provide the safeguards upon which its constitutionality depends.

While our search has failed to reveal any case in which the precise question was raised, similar situations have been before the courts in a number of cases. In re Whitwer, D.C., 44 F.Supp. 466, 473, involved reappraisal for the purpose of redemption by the debtor under Subsection s (3). Concerning the reappraisal under this provision, the court said:

"In this connection, the court is also of the opinion that the more orderly course would allow the local conciliation commissioner, if either party objects to the reappraisal, to rule upon it and the objections, unless he prefer to refer it, on his own motion and responsibility, to the court for initial ruling. Thus, ordinarily the court would expect to rule upon the reappraisal only through the instrumentality of exceptions to the conciliation commissioner's order thereon."

In In re Connell, 2 Cir., 129 F.2d 920, 921, the debtor asked for a reappraisal under Subsection s(3). The reappraisal resulted in a higher valuation and the debtor then sought to relieve himself from the increased valuation by objecting thereto. His right to challenge the reappraisal seems not to have been questioned. The appellate court referred to the absence of appropriate language in Subsection s(3) providing for a challenge of the reappraisement. Concerning this, the court said:

"It is inherent in this provision that the conciliation commissioner, acting as the referee under § 75, sub. s(4), was required to give the debtor an opportunity to be heard on the question of valuation, to present evidence and to object to the reappraisal before it was approved. * * * Only by so doing can there be assurance that the debtor will be given 'the full measure of the relief' to which the Act entitled him. Cf. Wright v. Union Central Ins. Co., 311 U.S. 273, 279, 61 S.Ct. 196, 200, 85 L.Ed. 184."

The first paragraph of Subsection s provides that "The *appraisals* shall be made in all other respects with rights of objections, exceptions, and appeals, * * *." The reference is to all appraisals. The first paragraph of Subsection s provides for but one appraisal. Subsection (3) provides for another appraisal. Subsection (3) is a part of Subsection s. Is it not reasonable, therefore, to assume that by the use of the plural in the first paragraph of the section Congress intended to provide for an appeal from any appraisal provided for in Subsection s and therefore thought it unnecessary to repeat the language when it framed Subsection (3)? This construction seems to be borne out by the concluding proviso of paragraph 1 of Subsection s. It provides: "That in proceedings under this section, either party may file objections, exceptions, and take appeals * * *." A reappraisal under Subsection (3) is a proceeding under Subsection s and would be included within this proviso providing for objections, exceptions and appeals.

■■ It is our conclusion that the right to challenge a reappraisal by any party affected thereby under Subsection s(3) is contemplated by Subsection s. Such a construction protects the fundamental rights of both the debtor and the creditor. When the reappraisal was set aside, the matter stood as though no new appraisal had been made. The value could then be determined either by appointment of new appraisers or could be fixed by the court itself upon proper hearing.

Affirmed.