**In re HOAG et al.**
**No. 7071.**

District Court, D. Vermont.

Sept. 26, 1945.

528

Bernard J. Leddy, of Burlington, Vt., for debtor.

J. H. Macomber, Jr., of Burlington, Vt., for creditor.

LEAMY, District Judge.

This is a petition filed by Edith C. Hoag, surviving debtor in the above entitled proceedings, wherein she prays the Court to order J. H. Macomber, a secured creditor, to refund to her certain moneys which she allegedly paid to him under protest and duress. There is very little conflict on the facts, and from the files, the testimony and exhibits, and the briefs, I make the following

### Findings of Fact.

1. On May 12, 1941, the debtors filed their petition alleging that they were engaged primarily in farming; that they were unable to meet their debts as they matured and representing to the court that they desired to effect a composition or an extension of time to pay their debts under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The petition was accompanied by a schedule of creditors, wherein Laura M. Jones appeared listed as a secured creditor. The petition was approved and referred to the court's Conciliation Commissioner for further proceedings as required by law.

2. On May 22, 1941, ten days after the approval of the debtors' petition, J. H. Macomber purchased the secured claim of Laura M. Jones, and at the first meeting of creditors on July 21, 1941, his secured claim was allowed in the sum of $4,929.36. The claim is represented by a promissory note executed by the debtors on February 7, 1936, in the face amount of $5,000 payable to the said Laura M. Jones three years after date, "with interest at five per cent (5%) per annum, payable in equal monthly installments on or before the seventh day of each and every month." The note is duly endorsed by the said Laura M. Jones to J. H. Macomber. The note is secured by a first mortgage on the debtors' real estate, being a farm of about 146 acres. This mortgage was duly assigned by Laura M. Jones to J. H. Macomber on May 22, 1941.

3. The following claims were filed with and allowed by the Conciliation Commissioner.

J. H. Macomber, Burlington, Vt.
Secured 4929.36
Arthur Walker, Burlington, Vt.
Secured 9504.00
Personal Finance Co., Burlington, Vt. Secured 132.88
International Harvester Co., Albany, N. Y. Secured 95.00
Mrs. W. W. Aldrich, Burlington, Vt. Unsecured 10.00
Burlington Trust Co., Burlington, Vt. Unsecured 106.05
Strong Hardware Co., Burlington, Vt. Unsecured 152.47
Carleton Allis, Charlotte, Vt. Unsecured 107.90
J. H. Middlebrook & Sons, Burlington, Vt. Unsecured 81.60
Farm. Credit Administration, Claremont, N. H. (originally secured but security entirely dissipated) 295.00

4. On or about October 15, 1941, and within the time set by the Conciliation Commissioner, the debtors submitted to the creditors a "proposal of composition and extension," which for convenience will be hereinafter referred to as the proposal. The proposal differed as to the various creditors and apparently was accepted by all of the creditors except J. H. Macomber. This constituted a majority both in number and amount. The proposal as to the Macomber claim was as follows:

"J. H. Macomber, Sr. assignee of a first real estate mortgage on said debtors' premises in Burlington and South Burlington, Vermont, given by said debtors to Laura M. Jones of Burlington, Vermont, upon which there is an unpaid balance of $4986.86 as of October 15, 1941.

"Said debtors propose to pay interest on the above mentioned unpaid balance from

the 15th day of October 1941 to the 15th day of October 1944 at the rate of 3% per annum, payable in monthly installments of $12.46 each month, the first payment being due and payable on or before the 15th day of November 1941 and a like payment of $12.46 due and payable on or before the 15th of each month thereafter to and including the 15th day of October 1944, after which date principal and interest on said mortgage to be paid in accordance with the terms and conditions contained in said mortgage."

5. On October 20, 1941, the debtors petitioned for confirmation of the proposal as to all creditors. At the hearing thereon on November 26, 1941, at which time opposition was presented by creditor Macomber, it was ordered that the proposal be confirmed.

6. The debtors retained possession of and operated their farm property in accordance with the terms of the proposal for the period of three years.

7. On October 16, 1944, the debtors gave to the University of Vermont and State Agricultural College an option in writing to buy their farm, with the stock and tools thereon, for the sum of $24,000. The option is petitioner's Exhibit No. 1. Four days thereafter, the debtor Ezra M. Hoag died.

8. On October 21, 1944, the University accepted the option and shortly thereafter demanded from the surviving debtor a warranty deed of the real estate and a bill of sale of the personal property, free and clear of encumbrance, in accordance with the terms of the option. The University advised the surviving debtor that it desired to sell off the personal property on November 18, 1944. Thereupon the debtor, through her attorney, advised creditor Macomber of the proposed sale and the terms thereof, and requested of him a statement of the amount due on the mortgage indebtedness under the terms of the composition and extension order. The creditor's note and mortgage called for interest on the debt at the rate of five percent per annum. During the three year period, the debtors had paid interest at the rate of three per cent per annum in accordance with the order of confirmation. Macomber demanded interest on the indebtedness at the rate of 5% for the three year period instead of at the rate of 3% as provided in the order of confirmation, under the claim that the interest continued to accrue at the five per cent rate

and that he was entitled to the additional two percent, since the three year period had expired, and he refused to discharge his mortgage unless this disputed interest item was paid.

9. On November 15, 1944, by verbal agreement between the debtor and the University, the latter entered into possession of the real estate and personal property, and two days thereafter, in writing, demanded of the debtor a warranty deed and bill of sale, of all of which facts creditor Macomber was apparently aware. The surviving debtor was unable to carry on the farm, because of the recent death of her husband and because of the death of her son in military service.

10. On December 8, 1944, pursuant to the demands of the University and the terms of the option agreement, the surviving debtor executed and delivered to the University a warranty deed of the real estate and bill of sale of the personalty all free and clear of encumbrance. The transaction took place at the office of creditor Macomber, at which time the debtor, through her attorney, again inquired of Macomber the amount due on his mortgage and Macomber replied that the amount then due was $5344.60, which sum included interest at 5% per annum for the three year period instead of 3%, and that he would not discharge his mortgage unless the sum of $5,344.60 was paid to him.

11. Thereupon the debtor paid Macomber the sum of $5,344.60 under protest, claiming duress, and the payment was accompanied by a letter (Petitioner's Exhibit No. 5) in which, for the reasons therein stated, she protested the payment and claimed that it was made under duress. She now asks the Court to order creditor Macomber to refund to her the amount involved, $320.86, with interest from the date of the alleged overpayment.

12. All of the exhibits are hereby referred to and made a part hereof.

### Discussion.

The creditor resists the petition on the following grounds:

(1) The Court has no jurisdiction to order the repayment; (2) there was no overpayment under the provisions of the proposal; (3) there was no duress which would entitle the petitioner to recover the alleged overpayment; (4) the provision of section 75, subsection k, permitting a reduction in the interest rate on a secured debt,

is unconstitutional in the circumstances of this case as violating the due process clause; (5) the agreement was not accepted by the requisite number of creditors because (a) these creditors did not vote by classes, and (b) if section 75, subsection g, does not require a vote by classes, it is unconstitutional in the circumstances of this case as violating the due process clause; (6) the provisions of section 75, subsections g and k, if it be construed as permitting a reduction in the interest rate on a secured debt without requiring acceptance by a majority of each class of creditors, are unconstitutional in the circumstances of this case as not being bankruptcy legislation and hence in violation of the tenth Amendment.

Of course the first question for determination is whether or not the Court has jurisdiction to entertain the petition and issue an order thereon. The creditor, in his brief, contends that the Court has no jurisdiction over his person such as would support an order for repayment, and that since the debt has been paid and the mortgage discharged, that the jurisdiction of the Bankruptcy Court has terminated, since the jurisdiction of the Court is limited to "the period of the extension" and that all of the events out of which the controversy arises occurred after the expiration of the extension period.

But the Act clearly provides that for the purpose of enforcing the terms of the confirmed proposal, that the Court has jurisdiction over the person of a creditor and that its jurisdiction does not terminate with the so-called extension period. Subsection k provides that "upon its confirmation, a composition or extension proposal shall be binding upon the farmer and his secured and unsecured creditors affected thereby * * *." Subsection l provides that if the confirmed proposal is one of composition, that the consideration is to be distributed under the supervision of the conciliation commissioner as directed by the Court and the case then dismissed. But if the proposal is one of extension the Court may "retain jurisdiction of the farmer and his property during the period of the extension in order to protect and preserve the estate *and enforce through the conciliation commissioner the terms of the extension proposal.*" (Italics supplied.) Although this subdivision uses the expression "during the period of the extension" it cannot be construed to mean that the Court cannot enforce its confirmation order thereafter; or that the creditor is not subject to the Court's jurisdiction thereafter, because subdivision o has operated as an automatic stay of his original claim, which he cannot enforce without the Court's permission, thus holding him within the latter's jurisdiction. This subsection provides that: *"Except upon petition made to and granted by the judge* * * * the following proceedings shall not be instituted * * * in any court *or otherwise,* against the farmer or his property, *at any time after the filing of the petition under this section,* and prior to the confirmation *or other disposition of the composition or extension proposal by the court:* (1) Proceedings for any demand, debt, or account, *including any money demand; * * *."* (Italics supplied). And subsection o is supplemented by subsection p which provides that the prohibitions of subsection o "shall apply to all creditors, public or private."

Thus it seems apparent that so far as the enforcing of its confirmation order is concerned, the Court retains jurisdiction of the creditor and the debtor until the case is terminated.

As the basis for the creditor's claim that there was no overpayment to him, he contends that the limitation of interest to 3% during the three-year period was a suspension of payment only, and not a reduction in the interest rate from 5% to 3%.

The Act requires a debtor to submit a proposal for a composition or extension. Although neither of these terms are defined in the Act, it seems to be generally assumed in the decisions that a composition is an agreement for the payment of a certain percentage of a creditor's claim in full satisfaction, while an extension contemplates an agreement extending the time within which a claim is to be paid. Before its amendment by the Act of August 28, 1935, subsection k provided that a "composition or extension shall not reduce the amount of nor impair the lien of any secured creditor, but shall affect only the time and method of its liquidation," 47 Stat. 1472, and there were decisions thereunder which held that under that subsection a proposal which reduced the interest rate of secured creditors could not be confirmed. But the subsection, as now amended, clearly allows the reduction of a secured creditor's claim provided the lien is preserved at the fair and reasonable market value of the security, and it also allows the reduction of

the future interest rate on all debts, secured or unsecured, regardless of the market value of the property.

■ The debtors' proposal as to creditor Macomber is set forth verbatim in paragraph 4 of the Findings of Fact. It was a proposal both of composition *and* extension and was apparently so understood by all concerned. It was a proposal of composition, in that it reduced the amount of interest payable for the three year period, as permitted by the Act, and it was a proposal for extension in that it postponed the payment of the principal. No other construction can reasonably be given to it.

■ With the debtor's claim that the payment was made under duress and the creditor's reply that it was voluntary and that there was no duress in the strict legal sense it seems to me, we are not concerned. Certainly, if it were necessary to do so, I would hold that the payment was made under duress. The debtor was under contract to sell her farm at a figure which would permit her to pay her creditors in full. She could not convey a clear title without a discharge of the Macomber mortgage and Macomber refused to discharge the mortgage unless she paid interest at a rate which was above the rate to which it had been reduced by the Court. But whether there was duress or whether there was no duress is beside the point. The simple question is whether or not this creditor, who in his demands upon the debtor is subject to the jurisdiction of this Court, has demanded and collected of the debtor more than he was authorized to collect under the provisions of the court order. And the short answer to the question is that he has. The order of confirmation reduced the interest on the Macomber mortgage from 5% to 3% for the three-year period, and when he demanded and collected interest of more than 3% for that period of time it was in violation of the order.

■ Nor can the creditor's grounds 4, 5b and 6, wherein he attacks the constitutionality of subsections g and k be sustained, since the decisions uniformly hold that section 75 is well within the bankruptcy power, and its validity seems now to be solidly established. Wright v. Vinton Branch Mountain Trust Bank, 300 U.S. 440, 57 S. Ct. 312, 81 L.Ed. 395, held valid subsection s, and Wright v. Union Central Life Insurance Co. 304 U.S. 502, 58 S.Ct. 1025, 82 L. Ed. 1490, while sustaining the validity of subsection n, defined the bankruptcy power

in the broadest of terms. The validity of the Act was also upheld in State of North Dakota v. Hegstad, 8 Cir., 134 F.2d 598; Nalder v. Federal Land Bank, 10 Cir., 131 F.2d 74; Dombrowski v. Beu, 9 Cir., 114 F.2d 91; Cohan v. Elder, 9 Cir., 112 F.2d 967.

■ The only remaining ground of the creditor's objections to the petition is No. 5 in which he claims that the order of the Court confirming the proposal is void so far as it purports to bind him, since a majority in number and amount of creditors of the class to which he belonged did not accept the debtor's proposal; it being his contention that subsection g should be construed as requiring a classification of creditors according to the type of security held by them, if any, and an acceptance by a majority in number and amount of each class.

But the plain words of the statute reveal that this was not the intent of Congress. Subsection g provides that "an application for the confirmation of a composition or extension proposal may be filed in the court of bankruptcy after, but not before, it has been accepted in writing, by a majority in number of all creditors whose claims have been allowed, including secured creditors whose claims are affected, which number shall represent a majority in amount of such claims."

To hold that this clear and unambiguous language requires a classification of creditors would be nothing short of judicial legislation. The statute requires only a majority in number and amount of all creditors. In re Lowman, 7 Cir., 107 F.2d 540, certiorari denied 309 U.S. 680, 60 S.Ct. 724, 84 L.Ed. 1024, rehearing denied 310 U.S. 656, 60 S.Ct. 896, 84 L.Ed. 1420, rehearing denied 311 U.S. 724, 61 S.Ct. 54, 85 L.Ed. 472.

I hold therefore that creditor Macomber has demanded and collected from the debtor the sum of $320.86 in violation of the order of this Court. Let it be repaid, with interest thereon at 6% from December 8, 1944 to the date of payment; payment to be made on or before the date when the time for appeal expires, unless within said time an appeal is taken. As to the prayer in the petition that the proceedings be dismissed for the reason that the order has been fully complied with, the order is as follows: If repayment is made, the entry will be "petition granted." If repayment is not made, the entry will be "decision reserved."