## RAFERT v. CONWAY et al.

No. 11857.

Circuit Court of Appeals, Eighth Circuit.

April 22, 1941.

S. L. Winters, of Omaha, Neb., for appellant.

Winfield R. Ross, of Omaha, Neb., for appellee Equitable Life Assur. Soc. of the United States.

Charles H. Kelsey and Hadley Kelsey, both of Norfolk, Neb., for appellee Rosella Conway.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by William C. Rafert, a farmer bankrupt, to reverse orders of the District Court which direct the appointment of a trustee to dispose of or liquidate two mortgaged farms belonging to the bankrupt, either by disclaiming said real estate as burdensome, or by giving leave to the creditors who have the mortgage liens thereon to complete the foreclosure actions against the same which they have pending in the state courts. The record shows that after the entry of said orders, the appointed trustee did examine the lands and reported the same to be burdensome to the estate, and the court having ordered him to abandon them, he complied with the order. The court also ordered that the mortgagees be authorized to proceed with their foreclosures in the state court. The appeal brings up the several orders for our consideration.

It appears that the debtor's petition was first filed December 5, 1938, under section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and the schedules filed disclosed the bankrupt's ownership of the two farms, one in Pierce County subject to a mortgage to the Equitable Life Assurance Society, and the other in Seward County subject to a mortgage to Rosella Conway, both mortgages being in the course of foreclosure in the state courts. The proceedings were then carried on pursuant to the provisions of section 75. The debtor filed his written proposal to his creditors within the time fixed by the conciliation commissioner, and after notice they filed their respective refusals to accept the same. The two lien creditors above named then filed their respective motions to dismiss the lands from the proceedings and for leave to complete their mortgage foreclosure. The court denied these motions. The order recited that the lands were rented, the farming season was on, and the court felt the debtor should have "at least another year to make some headway in rehabilitating himself", but the creditors were given leave to renew their motions after the expiration of the harvest season of 1939.

This order was entered on April 19, 1939, but before the expiration of the year mentioned in the order and on October 31, 1939, the farmer filed his amended debtor's petition in proceedings under 75, sub. s, of the Bankruptcy Act 11 U.S.C.A. § 203, sub. s, and on December 2, 1939, an order was duly entered upon that amended petition adjudging him a bankrupt "as provided by section 75, sub. s." The order directed a reference of the amended petition to a conciliation commissioner and referee, and provided:

"Such conciliation commissioner is directed to promptly fix a time for a first meeting of the bankrupt's creditors to be held within thirty days and to notify by mail creditors and bankrupt of the time and place of such meeting. At such first meeting the bankrupt may petition the court for an appraisal of all of his property, and to have his exemptions set aside and that he be allowed to retain possession of his property, and thereupon the conciliation commissioner shall appoint three appraisers (See Section 70, sub. b, of Bankruptcy Act 11 U.S.C.A. § 110, sub. b,) who shall appraise all of the property of the bankrupt at its fair and reasonable market value (See Section 75, sub. s, of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s). As soon as the appraisal is made, the conciliation commissioner shall make an order setting aside to the bankrupt his proper exemptions and shall order that the possession (under the supervision and control of the court) of the bankrupt's property shall remain in the bankrupt, subject to all incumbrances (Section 75, sub. s(1).

"The conciliation commissioner shall continue to act, under the direction of the court, until the proceedings shall be concluded. See Section 75, sub. s(4)."

This order was in all respects in accord with the provisions of 75, sub. s, and was adapted to preserve to the farmer the rights in his lands in relation to his mortgagee creditors which are accorded him by 75, sub. s. His attempt to effect composition with the lien creditors under section 75 had failed as they had refused his proposals, and no further effective remedy being available to him under that section, his resort to 75, sub. s, was proper. The mortgaged lands were then within the bankruptcy jurisdiction and there was no power to deprive the farmer of them ex-

cept in strict compliance with the provisions of 75, sub. s, liberally construed to effectuate the legislative intent. The rights accorded to him under Section 75, sub. s, are substantial and material and this farmer debtor was not only entitled to all of such rights by the terms of 75, sub. s, but the court's order of adjudication of December 2, 1939, directed that all the necessary steps should be taken by the conciliator and referee to preserve them to him. That order was not appealed from and judicially established the debtor's rights to the benefits of Section 75, sub. s.

But in the order which the court made in the Section 75 proceedings on April 19, 1939, denying the lien creditor's petition to dismiss the mortgaged lands from the bankruptcy, there was a direction that the debtor should reduce the balance of the rentals of his two mortgaged farms for the year 1939 to cash and should pay the amount less the sum of $150 ($75 from each of the farms) into the registry of the court to await its further order.

Although the debtor collected $197.74 in corn rent from the Pierce County farm, he did not pay the money into the registry of the court as contemplated by the order, and the fact was disclosed to the court by the report of the supervising conciliation commissioner and established on hearing on June 3, 1940. The court thereupon ordered that the debtor be granted a period of thirty days from June 4, 1940, within which to pay into the registry of the court all of the balance of the rentals referred to in the order of April 19, 1939, and that if he failed to do so, a trustee should be appointed to dispose of the real estate. The debtor's continued failure to make the payment was the sole ground upon which the court made the orders for appointment of trustee and for the abandonment of the lands and for permission to complete the mortgage foreclosures which are now under consideration.

■ It is contended that there was jurisdiction in the bankruptcy court under the Act independent of the 75, sub. s, amendment to impose upon the debtor an obligation to turn over the rent money from his lands such as is contained in the above order of April 19, 1939. Sections 75, subs. e, n and o, are particularly called to our attention. But the order of April 19, 1939, did not dismiss the debtor's lands nor order their abandonment nor permit foreclosure of the mortgages. It went no further than to direct that the debtor should make certain payments. It was not appealed from and we do not pass upon the contentions concerning the court's jurisdiction to enter it. At the time the abandonment orders of June 4, 1940, and July 5, 1940, which we are considering, were entered against the appellant, he had duly filed his petition under the 75, sub. s, amendment and was adjudicated a bankrupt under section 75, sub. s, and it was established judicially that he was entitled to all the benefits of that section. The orders appealed from by their terms plainly infringe upon those benefits and take them away, contrary to the provisions of the amendment, and we do not find authority for such action under any of the provisions of the Act as amended.

In the recent case of Wright v. Union Central Life Insurance Company, 311 U. S. 273, 61 S.Ct. 196, 199, 85 L.Ed. ——, the District Court had entered an order in farmer bankruptcy proceedings under 75, sub. s, in which it was directed that the mortgaged lands of the farmer debtor should be "sold 'at public sale to the highest bidder and for cash, without any relief whatever from valuation and appraisement laws.'" The order was not as drastic against the debtor as the orders here appealed from in which a complete abandonment of the mortgaged lands, without any relief whatever to the debtor, has been directed. The Supreme Court found that the order to sell the lands without according the debtor the rights and benefits of 75, sub. s, was erroneous and reversed the same. The duty of the court to fully preserve to the debtor all the benefits of subsection "s" was reiterated and the intent of Congress to provide "a procedure to effectuate a broad program of rehabilitation of distressed farmers faced with the disaster of forced sales and an oppressive burden of debt" was again stressed. It is also made very clear that there is no discretion in the court to deprive the debtor of the express and fundamental statutory rights under 75, sub. s, "dependent upon general equitable considerations". As to the provisions that "the court may * * * order the property sold or otherwise disposed of as provided for in this Act [title]" if the debtor "fails to comply * * * with any orders of the court made pursuant to this section", the court said (61 S.Ct. page 200): "Respondent, however, places great reliance on that part of § 75, sub. s

(3), which provides that if the debtor 'at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act (title).' This provision is somewhat ambiguous. And no significant light is thrown on its meaning by the Committee Reports.* To be sure it was relied on by this Court in Wright v. Vinton Branch, supra, 300 U.S. [440] pages 460–462, 57 S.Ct. [556] pages 560, 561, 81 L. Ed. 736, 112 A.L.R. 1455, for the conclusion that the three-year stay provided for in § 75, sub. s(2), is not an 'absolute one' but that 'the court may terminate the stay and order a sale earlier.' 300 U.S. page 461, 57 S.Ct. [556] page 561, 81 L. Ed. 736, 112 A.L.R. 1455. But there is nothing in that opinion or in the Act which says that that power of the court may be utilized so as to wipe out the clear and express right of the debtor under § 75, sub. s(3), to redeem at the reappraised value or at the value fixed by the court. Nor can the existence of that power be fairly implied. The power of the court to 'order the property sold or otherwise disposed of as provided for in this Act (title)' cannot be taken to mean a discretionary power to terminate the proceedings through the exclusive device of a public sale. Congress has provided that certain contumacious conduct on the part of the debtor or his inability to refinance himself within three years may be an appropriate basis for a termination of the proceedings or for an acceleration thereof. We cannot infer, however, that Congress intended that such facts should have any further legal significance under the Act. To hold that they empowered the court to deprive the debtor of his express and fundamental statutory right to redeem at the reappraised value or at the value fixed by the court would be to imply a power of forfeiture wholly incompatible with the broad design of the Act to aid and protect farmer-debtors who were victims of the general economic depression. Wright v. Vinton Branch, supra, 300 U.S. page 466, 57 S.Ct. [556] page 563, 81 L.Ed. 736, 112 A.L.R. 1455. Such an important remedial right cannot be lost by mere implication. And to hold that the court has the discretion to deny or to grant the debtor's right to redeem at the reappraised value or at the value fixed by the court, dependent on general equitable considerations, would be to rewrite the Act, so as to vest in the court a power which Congress did not plainly delegate. This discretionary power of the court is exhausted when the court terminates the proceedings or accelerates their termination. Such termination can be effected only pursuant to the precise procedure which Congress has provided."

We think the reasoning of the court makes it very clear that the abandonment and the grant of leave to foreclose here appealed from should be reversed. Reversal is ordered accordingly with direction to restore the mortgaged lands to the bankruptcy under 75, sub. s, and to proceed further under that section of the Bankruptcy Act.

---

* S.Rep.No.985, 74th Cong., 1st Sess.; H.Rep.No.1808, 74th Cong., 1st Sess.