RAFERT v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

No. 12568.

Circuit Court of Appeals, Eighth Circuit.

Oct. 25, 1943.

Writ of Certiorari Denied Jan. 3, 1944.

See 64 S.Ct. 431.

S. L. Winters, of Omaha, Neb., for appellant.

Winfield R. Ross, of Omaha, Neb., for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from an order entered in a farmer-debtor proceeding under § 75, sub. s, of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s. In re Rafert, D.C., 48 F. Supp. 459.

On a former appeal in the same proceeding an order of the district court directing the appointment of a trustee to dispose of or liquidate two mortgaged farms belonging to the debtor was reversed and the court was instructed to restore the lands to the bankruptcy proceeding and to proceed under § 75, sub. s. Rafert v. Conway et al., 8 Cir., 119 F.2d 102. One only of the

two farms is involved in this appeal—the one subject to a mortgage owned by the appellee, the Equitable Life Assurance Society of the United States, hereinafter called the Equitable.

In compliance with the mandate of this court, Judge Donohoe entered an order on August 9, 1941, staying all judicial proceedings in any court against the debtor or any of his property for a period of three years. The order provided that during the three-year period the debtor should pay share rent and $10 cash per year for the use of the buildings and lots and the well. The three-year period would expire on August 9, 1944, and the order provides that "if the debtor shall remain in possession for a portion of the 1944 crop year (considered as beginning on March 1, 1944), he shall pay rent proportionately for the time of such occupation."

The amount and kind of rentals provided for in this order conformed to the terms of a stipulation entered into between the debtor and the Equitable on July 25, 1941; and there is no complaint in respect of this feature of the order.

The debtor does not operate his farms personally but lets them to tenants. The stipulation of July 25, 1941, provided: "* * * the debtor to pay said cash rentals promptly upon receipt thereof from his respective tenants; * * * to be paid to the Clerk of the United States District Court." This provision as to time of payment was omitted in the order of August 9, 1941.

On April 6, 1942, Equitable filed a petition representing that the debtor had paid the 1941 rentals for small grain but had failed and refused to pay the proceeds received from the sale of the 1941 corn and the cash rent and stating that taxes are unpaid in the amount of $685. An order was requested fixing the time for paying future rentals in accordance with the terms of the stipulation and directing the debtor to pay all rentals promptly.

On April 22, 1942, it was stipulated that the debtor had on that day accounted for all 1941 rentals except $19 which would be paid as soon as received from the tenant.

The petition filed on April 6, 1942, came on for hearing before Judge Delehant on April 27, 1942, and an order was entered on that day approving and confirming the stipulation of April 22, 1942, and ordering that "the rent share of all crops raised during the pendency of bankrupt's moratorium be sold promptly after they are harvested and the proceeds forthwith paid into the Registry of the Court * * * that the cash rental * * * be paid on December 1 of each year and that the rent share of conservation money, if any, be paid into Court promptly upon receipt thereof." Although this provision fixing time of payment of rentals conforms to the terms of the stipulation of July 25, 1941, it is the sole basis of the debtor's present complaint.

No appeal was taken from this order.

On December 14, 1942, Equitable filed a petition informing the court that the debtor had failed and refused to pay rentals into court in obedience to the order of April 27, 1942, and asking for an order enforcing payments in compliance therewith and for the appointment of a trustee to liquidate the estate. The debtor answered, admitting his failure to turn over the rentals to the court under the order of April 27, 1942, and asserting that the order was entered under a misapprehension of the provisions of § 75, sub. s, and without jurisdiction of the court. After a hearing the conciliation commissioner reported, recommending that the debtor be given until February 1, 1943, to comply with the order and pay the rentals, and that in the event he failed to make such payments before that date a trustee be appointed to liquidate the estate.

The debtor filed a petition to review the report of the conciliation commissioner and objected to his recommendations. He admitted that he had collected certain rentals from his tenant and that the corn had been harvested and was in his possession. He contended that the order of April 27, 1942, was beyond the power of the court and was void. His contention was that the Act itself fixes the time for paying rentals; that the rent for the first year is not due and payable until the end of the year after entry of the stay order and that the rentals for the second and third years are payable in equal semi-annual installments; that is, that the rentals for 1941 were not payable before August 9, 1942, and that the rentals for the crop season of 1942 are payable in equal parts on February 9 and August 9, 1943. In the hearing before the commissioner he testified that he would pay about $500 on February 9, 1943, and that he intended to use the balance of $500 rental money to buy livestock to feed, and that he

hoped he would not lose the last half of the rental money by speculations in hogs before the second rental payment was due according to his computation.

On February 3, 1943, the court entered an order confirming the report of the conciliation commissioner and adopting his recommendations, except that the debtor was given until February 15, 1943, to pay into court the rentals collected by him for 1942. During oral argument to the court the debtor admitted that he had in his possession $167.40 received for 372 bushels of barley and $850 received for about 1,200 bushels of corn.

The court appointed a trustee for the sale or other disposition of the land in accordance with the provisions of § 75, sub. s(3) of the Bankruptcy Act, reserving to the debtor his redemption rights. The order provided that the appointment of a trustee should have no force and effect in the event the debtor should, on or before February 15, 1943, pay into the registry of the court all rentals received by him on or before that date for 1942, and lodge with the clerk a statement in writing giving detailed information as to the crops accounted for.

A certificate of the clerk of the district court, dated March 1, 1943, states that the debtor had paid no rentals for 1942 into the registry of the court at that time.

To justify his persistent refusal to obey the orders of the court the debtor relies upon his own construction of that provision of § 75, sub. s(2), reading: "During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semi-annually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property."

 The debtor contends that the words "The first payment of such rental shall be made within one year of the date of the order staying proceedings" give the debtor the right to pay on the last day of that year, and that the words "pays a reasonable rental semiannually" mean that rentals accruing after the end of the first

year are payable in equal semi-annual installments at the end of each half year, not before; and that the court has no power to fix any other date for payments. The Supreme Court has said that the language of the Act is not free from doubt and that the clause providing that "the first payment of such rental shall be made within one year" means only "That the court may not postpone the payment beyond one year." Wright v. Vinton Branch, 300 U.S. 440, 467, 57 S.Ct. 556, 564, 81 L.Ed. 736, 112 A.L.R. 1455. The court in this case has placed a very reasonable construction upon the entire clause. See In re Rafert, supra. But we are not required on this appeal to construe the statute. The debtor's contention is without merit regardless of the technical construction of the statute. His argument that the court was without power and jurisdiction to enter the order of April 27, 1942, fixing the times for payment of rentals, and the order of February 3, 1943, enforcing it, is not sound.

 The subject matter of the proceeding and the debtor were both within the jurisdiction of the court, and although the first order may be erroneous, a point which we do not decide, it was not void. Wharton v. Farmers & Merchants Bank, 8 Cir., 119 F.2d 487, 489. Since the debtor did not appeal from the order of April 27, 1942, it is final and binding upon him, unless the court in the exercise of sound discretion subsequently reopens it, sets it aside, or modifies it. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557. The only limitation to the court's discretion arises when there are intervening vested rights, in which case the court cannot reopen or modify its former order to the prejudice of such rights. In this case the court did not elect to set aside the order fixing the time for the payment of rentals, and we do not think there exists any ground for charging an abuse of discretion in that respect. The provisions of the order were reasonable and fair, and in no way prejudiced or even inconvenienced the debtor. They were in accord with the terms of the stipulation entered into between him and his creditor, the Equitable; and he made no complaint at the time the order was entered and took no appeal therefrom. He simply and recalcitrantly refused to pay the rentals into court when he received them from his tenant. He chose to defy the court's orders and to take the chance

that such orders are void. His desire to keep the money belonging to the registry of the court for the admitted purpose of speculating in buying, feeding and selling livestock shows an indifference to the rights of his creditors equal to his disregard for the orders of the court. His position in both instances is untenable and supports the finding of the court that his conduct is contumacious within the meaning of the decision of the Supreme Court in Wright v. Union Central Life Insurance Co., 311 U.S. 273, 280, 61 S.Ct. 196, 85 L. Ed. 184. Such conduct justified the order of the court terminating the three-year period, unless he obeyed its orders within the reasonable period granted.

For the foregoing reasons the order appealed from is affirmed.

█ The appellant omitted from the printed abstract of the record on appeal certain portions of the proceedings designated by the appellee, and such matter has been printed in a supplement served and filed by the appellee. The expense of printing the supplement and the clerk's costs in connection therewith should be allowed and taxed as costs in the case. It is so ordered.