## WORLEY v. WAHLQUIST et al.

### No. 12960.

Circuit Court of Appeals, Eighth Circuit.

Aug. 8, 1945.

---

[1] The proceedings involved in the Wright case were apparently had at the expiration of the three-year stay period.

Herman Ginsburg, of Lincoln, Neb., for appellant.

L. H. Henderson, of Alliance, Neb. (R. O. Reddish, William H. Hein, Boyd & Metz, Mitchell & Gantz, and D. E. Williams, all of Alliance, Neb., on the brief), for appellees.

Before GARDNER, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant, a farmer in bankruptcy under section 75, sub. s, of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s, has appealed from some orders of the district court which (1) held that she had contumaciously failed to comply with the court's rental order for 1943; (2) required her to file a complete accounting of all crops raised, rents receivable, and Government soil conservation payments to her, during that year, and to make payment into court within 15 days of all rents due from her under the provisions of the rental order; (3) terminated her three-year stay, unless she fully complied with the accounting and payment order within the 15-day period; (4) denied her petition to redeem the property for the amount of the initial appraisal and also her further request for an "order fixing and determining the terms and amount of redemption"; and (5) directed that, in the event of her non-compliance with the accounting and payment order and the consequent termination of her stay rights, her lands should be sold at public auction by a trustee appointed for that purpose.

■ The record affords no basis for appellant to contend here that it was "clearly erroneous" for the trial court to hold that she was contumaciously delinquent under the rental order. We need not enumerate all the circumstances appearing in the record and detailed in the trial court's memorandum opinion that demonstrate her wilful refusal to recognize the court as her landlord, under section 75, subsection s(2), 11 U.S.C.A. § 203, sub. s(2), placing her property "in the custody and under the supervision and control of the court." Among her perversities, she had made no rental payments whatever into court at the time the hearing was held in December, 1943, although she admittedly had harvested and sold some of the crops and had also collected soil conservation payments and other rental monies; she had mortgaged part of the rental grains without authority from the court and had kept or used the proceeds; she had purported to make outside rental settlements with some "friendly" creditors and had entered into other financial arrangements with them, the nature of which she was unwilling to reveal and as to which—to use the language of the trial court's memorandum opinion— "she has evaded answering questions and professed lack of memory of details and generally exhibited the attitude that her relations * * * were none of the court's or her creditors' concern"; and she had speciously asserted on the present hearing, as a justification for her nonpayment of the rent, that the rental order was void because it allocated net rental monies from a part of the property among the lien creditors on an improper basis (a matter that obviously affected and concerned the lien creditors alone) and that she therefore was entitled utterly to ignore it and dodge all payment of rent for her year's occupancy.

■ We shall not further belabor appellant's contention on the question nor her parallel assailment of the requirement in the court's order that she file a full accounting and make payment into court within 15 days of the sums due under the rental order, if she wished to purge herself of her contumacious delinquency. Her argument here that 15 days was not a reasonable time in which to make the accounting and payment is a mere abstraction, for the time cannot be said to be unreasonable on its face in which to make a compliance of that character and she does not attempt to point out any circumstances or considerations that might make it unreasonable in the particular situation. But if a genuine desire to comply with the court's order has hitherto caused appellant to be disturbed over the sufficiency of the time fixed, the addi-

tional period (more than a year) which she has now gained by the taking of this appeal has no doubt eased the strain and left her in a position to make prompt obeisance to the order.

■ The validity and propriety of that part of the court's order terminating appellant's right of stay, if she did not obey the accounting and payment order and absolve her current recalcitrances, is similarly not open to attack on the facts in the record. 11 U.S.C.A. § 203, sub. s(3); and compare Rafert v. Equitable Life Assur. Soc. of United States, 8 Cir., 138 F.2d 185, certiorari denied 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 484.

■■ Nor was it error to deny appellant's petition to redeem for the amount of the initial appraisal. The lien creditors had filed requests for a reappraisal before she sought to complete a redemption. The statute purports to give an absolute right, on the timely request of either a creditor or the bankrupt himself, to have one reappraisal made in the proceeding or the value fixed on a hearing, before the court is required to enter any redemption order. The language used is that "upon request of any secured or unsecured creditor, or upon request of the debtor, the court *shall* cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court" (emphasis added), if he desires to make a redemption. 11 U.S.C.A. § 203, sub. s(3); and compare In re Wright, 7 Cir., 126 F.2d 92, certiorari denied 317 U.S. 627, 63 S.Ct. 39, 87 L.Ed. 507. Whether any additional reappraisal or hearing to fix value should thereafter be had would seem to be wholly a matter for the court's sound discretion on the circumstances of the particular situation.

■ Appellant argues that it was inequitable to deny her the right to redeem for the amount of the initial appraisal, because she intended to make such a redemption earlier and would have done so, except for the fact that the lien creditors wrongfully "refused to consent to redemption" unless she paid into court the amount of the rents due for previous years of occupancy under rental orders made in the proceeding before a formal stay-order had been entered. What the refusal of creditors "to consent to redemption" could legally or equitably

have to do with the exercise of appellant's right to redeem, we are unable to see. The statute prescribes the manner in which a redemption may be made and the exercise of that right is in no way dependent upon the consent of creditors. And, as we have indicated above, the statute does not give the right to make a redemption for the amount of the initial appraisal, if a timely reappraisal request is made, so that the court could not have granted appellant such a right against the creditors' pending request, no matter when she might have intended or attempted to redeem.

■ As to the contention that the court erred in denying appellant's request for an "order fixing and determining the terms and amount of redemption", insofar as the argument is directed to the right to redeem for the initial appraisal, that desideratum too has been wholly refracted by what we have just said. But the general observation may be made that, on any attempt by a farmer-bankrupt to redeem, the amount for which the property can be redeemed is and can only be the amount of the governing appraisal or value fixed on a hearing, and the terms are and can only be cash. When the bankrupt has completed his financing arrangements, he may properly be permitted to file a petition for redemption with an offer to pay in the amount of the then-controlling appraisal or fixed value on the hearing of the petition, in order to avoid the hardship of having the money tied up while the path is being cleared of any infirmities that may be alleged to inhere in the appraisal or of any requests for a reappraisal. Only, however, where the three-year stay has been ordered terminated or is expiring can there be any occasion for the bankrupt to request the court to fix a reasonable time within which he will be permitted to make a redemption —before the property is liquidated. Cf. Wright v. Union Central Life Ins. Co., 311 U.S. 273, 281, 61 S.Ct. 196, 85 L.Ed. 184; Huber v. Moran, 8 Cir., 140 F.2d 823.

■ This leaves only appellant's final contention that the court erred in directing the property to be sold at public auction, without giving her any opportunity to make a redemption before the liquidation, if she failed to comply with the accounting and payment order and her stay thereby became terminated. She contends, and correctly so we think, that, if she was not to be permitted to redeem for the amount of the initial appraisal, as she at-

tempted, the court, in view of her indicated desire to make redemption, should have ordered a reappraisal or fixed the value on a hearing and have given her an opportunity to redeem on that basis, and that it ought not in the circumstances of the situation to have ordered a liquidation at public auction until this had been done. We have held in Wolfheim v. State of South Dakota, 8 Cir., 150 F.2d 1005, that the request of creditors for a sale at public auction cannot deprive a farmer-bankrupt of his right to redeem for the amount of the appraisal, reappraisal, or fixed value. Nor does his failure to comply with the provisions of a rental order defeat his right to make such a redemption. His contumacious delinquency in failing to make rental payments can only be dealt with through the exercise of other powers.

This question is discussed in the Wright case, where the Supreme Court said, 311 U.S. at pages 280 and 281, 61 S.Ct. at page 200, 85 L.Ed. 184: "Respondent, however, places great reliance on that part of § 75, sub. s(3), which provides that if the debtor 'at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act (title).' This provision is somewhat ambiguous. * * * it was relied on by this Court in Wright v. Vinton Branch, supra, 300 U.S. [440], pages 460–462, 57 S.Ct. [556], 81 L.Ed. 736, 112 A.L.R. 1455, for the conclusion that the three-year stay provided for in § 75, sub. s (2) is not an 'absolute one' but that 'the court may terminate the stay and order a sale earlier.' 300 U.S. page 461, 57 S.Ct. page 561, 81 L.Ed. 736, 112 A.L.R. 1455. But there is nothing in that opinion or in the Act which says that that power of the court may be utilized so as to wipe out the clear and express right of the debtor under § 75, sub. s(3), to redeem at the reappraised value or at the value fixed by the court. Nor can the existence of that power be fairly implied. * * * Congress has provided that certain contumacious conduct on the part of the debtor or his inability to refinance himself within three years may be

an appropriate basis for a termination of the proceedings or for an acceleration thereof. We cannot infer, however, that Congress intended that such facts should have any further legal significance under the Act. To hold that they empowered the court to deprive the debtor of his express and fundamental statutory right to redeem at the reappraised value or at the value fixed by the court would be to imply a power of forfeiture wholly incompatible with the broad design of the Act to aid and protect farmer-debtors who were victims of the general economic depression. * * * And to hold that the court has the discretion to deny or to grant the debtor's right to redeem at the reappraised value or at the value fixed by the court, dependent on general equitable considerations, would be to rewrite the Act, so as to vest in the court a power which Congress did not plainly delegate. This discretionary power of the court is exhausted when the court terminates the proceedings or accelerates their termination. * * * We hold that the debtor's cross petition should have been granted; that he was entitled to have the property reappraised or the value fixed at a hearing; that * * * he was then entitled to have a reasonable time, fixed by the court, in which to redeem at that value * * *. Only in case the debtor failed to redeem within a reasonable time would the court be authorized to order a public sale."[1]

In the present situation, the court, as we have heretofore stated, properly denied appellant's petition to redeem for the amount of the initial appraisal. But when this redemption request was denied, the court should have directed a reappraisal, or fixed the value on a hearing, and have given appellant a reasonable opportunity to redeem for that amount, before it ordered the property to be sold at public auction.

The portion of the order directing the property to be sold at public auction, if appellant failed to comply with the accounting and payment order, without granting a reappraisal or fixing the value on a hearing and giving appellant a reasonable opportunity to make a redemption thereafter, is reversed, and the cause is remanded for further proceedings in relation to it. In all other respects the orders appealed from are affirmed.

---

[1] In the case at bar, the farmer-bankrupt, in the answer which she filed to the creditors' motion to strike her petition to redeem, while asserting that she had a right to redeem for the initial appraisal, prayed that she be granted "such other further and different relief as may seem just and equitable to the court in the premises."