WRIGHT *v.* UNION CENTRAL LIFE INSURANCE CO. ET AL.

No. 51. Argued November 20, 22, 1940.—Decided December 9, 1940.

*Mr. Samuel E. Cook,* with whom *Mr. William Lemke* was on the brief, for petitioner.

Mr. *Arthur S. Lytton,* with whom Mr. *Virgil D. Parish* was on the brief, for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case involves the same debtor and the same 200 acre tract of land as were involved in *Wright* v. *Union Central Life Ins. Co.,* 304 U. S. 502. As revealed in that case, the debtor is a farmer who filed a petition under § 75 of the Bankruptcy Act and later amended it under § 75 (s), asking to be adjudged a bankrupt.[1] This Court held that the 200 acre tract was subject to the jurisdiction of the bankruptcy court and that § 75 (n) extending the period of redemption was constitutional. The present record does not disclose all that has transpired in this proceeding. For example, it does not appear whether the debtor asked for an appraisal under § 75 (s) which it is the duty of the court to make on such request and in which event the three-year stay provided for in § 75 (s) (2) may start to run only after such appraisal has been made. *John Hancock Mutual Life Ins. Co.* v. *Bartels,* 308 U. S. 180; *Borchard* v. *California Bank,* 310 U. S. 311. But such problem is not sharply presented by the record before us. The narrow issue presented by this petition for certiorari and which moved us to grant it is whether under § 75 (s) (3) the debtor must be accorded

---

[1] Act of March 3, 1933, c. 204, 47 Stat. 1467, 1470; Act of June 28, 1934, c. 869, 48 Stat. 1289; Act of August 28, 1935, c. 792, 49 Stat. 942, 943. The petition was amended October 11, 1935, as authorized by § 75 (s) as enacted by the Act of August 28, 1935. Sec. 75 has been further amended by the Acts of March 4, 1938, and June 22, 1938, 52 Stat. 84, 85, 939, and by the Act of March 4, 1940, c. 39, 54 Stat. 40, but in respects not material here. Sec. 75, as now in force, appears in 11 U. S. C. § 203.

an opportunity, on his request, to redeem the property at the reappraised value or at a value fixed by the court before the court may order a public sale.

On July 22, 1938, respondent filed a petition praying that the proceeding be dismissed or, in the alternative, that an immediate sale be had, and alleging, *inter alia,* that the debtor's financial condition was beyond all reasonable hope of rehabilitation, that he had failed to comply with the order of the court requiring two-fifths of the crops to be delivered to the trustee, that he had made no offer of composition, and that he had failed to pay taxes and insurance and had made no payment on principal since 1925 and none on interest since 1930. The debtor's motion to dismiss the petition was denied. On October 5, 1938, the debtor filed both an answer to the petition, and a cross petition under § 75 (s) (3) to have the land appraised or a date set for hearing and after hearing evidence to have its value fixed, to be allowed to redeem at that value, and to be discharged from liability on account of any deficiency. Respondent answered alleging that the debtor was not entitled to redeem at such value and that by the terms of § 75 (s) (3) its request for a sale took precedence over any such right of the debtor. The court held a hearing at which evidence was adduced. It found, *inter alia,* that the amount owed by the debtor to respondent was $15,903.68, that the value of the property was $6,000, that there was no evidence upon which might be based a reasonable hope or expectation of the debtor's financial rehabilitation, that there was no evidence of his ability to effect a refinancing of the property at that value, and that he had failed and refused to obey orders of the court. Accordingly it ordered that the property be sold "at public sale to the highest bidder and for cash, without any relief whatever from valuation and appraisement laws"; that respondent be allowed to purchase at the sale

and to "utilize and be given credit for all or any part of the indebtedness of [the] debtor"; and that the debtor be barred from all equity of redemption in the property if it be not redeemed by him "within the time and in the manner allowed and provided" by § 75 (s) (3).[2] On appeal to the Circuit Court of Appeals that order was affirmed, 108 F. 2d 361, the court stating that the facts not only authorized the entry of the order but made such action imperative. We granted certiorari because of the importance of the problem to the orderly administration of the Act.

We think that the denial of an opportunity for the debtor to redeem at the value fixed by the court before ordering a public sale was error.

The provision in § 75 (s) (3) that at the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property, is followed by two *provisos*.[3] The first states that "upon request of

[2] Sec. 75 (s) (3) grants the debtor ninety days to redeem any property sold at a public sale, by paying the amount for which it was sold, together with 5% interest, into court.

[3] Sec. 75 (s) (3) reads as follows:

"At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: *Provided,* That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: *Provided,* That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any

any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, . . . and the debtor shall then pay the value so arrived at into court . . ." The second provides that "upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction."

True, the granting of a request for a public sale is mandatory. But so is the granting of a request for a valuation at which the debtor may redeem. Yet a reconciliation of these seemingly inconsistent remedies is not difficult if the purpose and function of the Act are not obscured. This Act provided a procedure to effectuate a broad program of rehabilitation of distressed farmers faced with the disaster of forced sales and an oppressive burden of debt. *Wright* v. *Union Central Life Ins. Co., supra; John Hancock Mutual Life Ins. Co.* v. *Bartels, supra; Kalb* v. *Feuerstein,* 308 U. S. 433. Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. *John Hancock Mutual Life Ins. Co.* v. *Bartels, supra,* at pp. 186–187; *Borchard* v. *California Bank, supra,* at p. 317. There is no constitutional claim of the creditor to more than that. And so long as that right is protected the creditor certainly is in no position to insist that doubts or ambiguities in the

property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this Act. If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act."

Act be resolved in its favor and against the debtor. Rather, the Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress (*John Hancock Mutual Life Ins. Co.* v. *Bartels, supra; Kalb* v. *Feuerstein, supra*), lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act.

Equal protection to debtor and creditor alike can be afforded only by holding that the debtor's request for redemption pursuant to the procedure prescribed in the first *proviso* of § 75 (s) (3) cannot be defeated by a request of a secured creditor for a public sale under the second *proviso*. Certainly equal protection of debtor and creditor would not be obtained if the contrary view were followed. Then the debtor's rights under the first *proviso* would be either dependent on the outcome of his race of diligence with a creditor, for which customarily he would be poorly equipped (Cf. *Kalb* v. *Feuerstein, supra*); or they would be defeasible at the instance of a creditor. Under our construction, however, the debtor will be given the benefit of an express mandate of the Act. And the creditor will not be deprived of the assurance that the value of the property will be devoted to the payment of its claim. For, as indicated in *Wright* v. *Vinton Branch*, 300 U. S. 440, 468, if the debtor did redeem pursuant to that procedure, he would not get the property at less than its actual value. In that case this Court, in sustaining the constitutionality of § 75 (s), emphasized that the Act preserved the right of the mortgagee to realize upon the security by a judicial sale. By our construction the exercise of this right is merely deferred or postponed until the other conditions and requirements of the Act, prescribed for the protection of the debtor, have been met. It is eventually denied the creditor only in case he is paid the full amount of what he can constitutionally claim.

Respondent, however, places great reliance on that part of § 75 (s) (3) which provides that if the debtor "at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act." This provision is some-what ambiguous. And no significant light is thrown on its meaning by the Committee Reports.[4] To be sure it was relied on by this Court in *Wright* v. *Vinton Branch, supra,* pp. 460–462, for the conclusion that the three-year stay provided for in § 75 (s) (2) is not an "absolute one" but that "the court may terminate the stay and order a sale earlier." (p. 461.) But there is nothing in that opinion or in the Act which says that that power of the court may be utilized so as to wipe out the clear and express right of the debtor under § 75 (s) (3) to redeem at the reappraised value or at the value fixed by the court. Nor can the existence of that power be fairly implied. The power of the court to "order the property sold or otherwise disposed of as provided for in this Act" cannot be taken to mean a discretionary power to terminate the proceedings through the exclusive device of a public sale. Congress has provided that certain contumacious conduct on the part of the debtor or his inability to refinance himself within three years may be an appropriate basis for a termination of the proceedings or for an acceleration thereof. We cannot infer, how-ever, that Congress intended that such facts should have any further legal significance under the Act. To hold that they empowered the court to deprive the debtor of his express and fundamental statutory right to redeem

---

[4] S. Rep. No. 985, 74th Cong., 1st Sess.; H. Rep. No. 1808, 74th Cong., 1st Sess.

at the reappraised value or at the value fixed by the court would be to imply a power of forfeiture wholly incompatible with the broad design of the Act to aid and protect farmer-debtors who were victims of the general economic depression. *Wright* v. *Vinton Branch, supra,* p. 466. Such an important remedial right cannot be lost by mere implication. And to hold that the court has the discretion to deny or to grant the debtor's right to redeem at the reappraised value or at the value fixed by the court, dependent on general equitable considerations, would be to rewrite the Act, so as to vest in the court a power which Congress did not plainly delegate. This discretionary power of the court is exhausted when the court terminates the proceedings or accelerates their termination. Such termination can be effected only pursuant to the precise procedure which Congress has provided. And so we return to our reconciliation of the two apparently conflicting *provisos* of § 75 (s) (3).

We hold that the debtor's cross petition should have been granted; that he was entitled to have the property reappraised or the value fixed at a hearing; that the value having been determined at a hearing in conformity with his request, he was then entitled to have a reasonable time, fixed by the court, in which to redeem at that value; and that if he did so redeem, the land should be turned over to him free and clear of encumbrances and his discharge granted. Only in case the debtor failed to redeem within a reasonable time would the court be authorized to order a public sale.

Some question has been raised as to the propriety of certain provisions of the public sale order, particularly those which give the creditor the right to utilize all of its indebtedness in bidding for the property.

The majority of the Court is of opinion that except for the modification we have indicated the order for sale should stand with the privilege of the respondent mort-

gagee to purchase at the sale and to receive credit for the indebtedness of the debtor in satisfaction of the purchase price and with the privilege of the debtor to redeem within ninety days upon payment of the sales price and interest thereon, as provided by § 75 (s) (3) of the Act.

To the extent indicated, we modify the judgment; and we remand the cause to the District Court for further proceedings in conformity with this opinion.

*Modified.*