## In re RHODES.
### No. 1191.

District Court, D. North Dakota, S. E. D.
March. 12, 1945.

Harry A. Weaver, of Fargo, N. D., for bankrupt.

John F. Lord, of St. Paul, Minn., for petitioning creditors.

VOGEL, District Judge.

This is a review of an order of the Supervising Conciliation Commissioner dated January 11, 1945, which order denies the petition of certain secured creditors asking for a hearing to fix the value of real estate which was security for payment of indebtedness owed by the bankrupt to them.

This case bears a long history of litigation. A brief but fairly complete recitation of the happenings in the case would seem imperative to a proper understanding of the problem now confronting this Court.

Arch S. Rhodes filed his petition and schedules under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on February 24, 1940. Composition or extension of the indebtedness with the creditors having failed and Rhodes having made proper petition, this Court adjudicated him a bankrupt on March 29, 1940. The case was thereupon referred to the Conciliation Commissioner for the county of the bankrupt's residence. Upon the subsequent resignation of the Conciliation Commissioner, the case was referred to the Supervising Conciliation Commissioner, before whom it was pending at the time review was taken of the order with which we are here involved. Rental order was properly entered on April 30, 1940. Certain real estate belonging to the bankrupt, amounting to four hundred acres in Wells County, was appraised at the sum of $2000 in April, 1940. In March, 1942, the bankrupt deposited the appraised value of $2000 and petitioned for redemption of the real estate at such figure. The creditors holding the mortgage on the land requested a reappraisal or a hearing on value. Hearing on value was held before the Supervising Conciliation Commissioner on June 2, 1942. On June 16, 1942, the said Commissioner entered his order fixing the value of the land at $2000. Review of such order was taken to this Court, and on March 26, 1943, this Court set aside the Commissioner's order and fixed the value at $4000. The case was thereupon re-referred to the Supervising Conciliation Commissioner, who, on April 22, 1943, entered his order, based upon the order of this Court, wherein he provided as follows:

"It is ordered that the said Arch S. Rhodes, said bankrupt under subsection (s) as amended of section 75 of the Bankruptcy Act, *pay into court* by payment to the undersigned supervising conciliation commissioner as additional amount required to effect redemption of said above described real property, *the further sum of $2000.00 on or before the 15th day of July, 1943.*

"It is further ordered that if the said Arch S. Rhodes, said bankrupt under subsection (s) as amended of section 75 of the Bankruptcy Act, should fail to pay into court the said sum of $2000.00 or or before the 15th day of July, 1943, that then and in that event the sum of $2000.00 heretofore paid by said bankrupt into court as above stated, be after said 15th day of July, 1943, refunded and returned to said Arch S. Rhodes, said bankrupt, without

further order herein." (Emphasis supplied.)

The bankrupt, however, believing himself aggrieved at the order of this Court dated March 26, 1943, raising the value to $4000, appealed therefrom to the United States Circuit Court of Appeals. Such appeal was taken without supersedeas bond and without making the additional deposit required by the order of this Court dated March 26, 1943, and the order of the Supervising Conciliation Commissioner, dated April 22, 1943, above quoted. On February 16, 1944, the Circuit Court of Appeals affirmed this Court's order of March 26, 1943. See: Rhodes v. Federal Land Bank of St. Paul et al., 8 Cir., 140 F.2d 612. Thereafter the bankrupt filed petition for certiorari to the United States Supreme Court, such petition being denied on May 15, 1944. See: Rhodes v. Federal Land Bank of St. Paul et al., 322 U.S. 741, 64 S.Ct. 1143. Subsequently this Court entered judgment on the mandate on May 26, 1944. The bankrupt made no attempt to comply with the order of this Court dated March 26, 1943, or the order of the Supervising Conciliation Commissioner dated April 22, 1943, until November 16, 1944, at which time he sought to redeem at the value of $4000. In the interim, however, and on November 2, 1944, the creditors herein filed a petition with the Supervising Conciliation Commissioner asking for a hearing to fix the present value of the land. In such petition the creditors pointed out that the value fixed by this Court on the bankrupt's land was based upon testimony introduced before the Conciliation Commissioner on June 2, 1942, approximately two and one-half years previously. Among other things, the petition alleges:

"That during the period from the spring of 1942 to the present time the inventories of unwilling farm owners in the locality of this farm have been liquidated, and the land market has changed from a buyer's market to a seller's market. That the farm in issue in this proceeding is located in a district where ownership of farms is almost 100 percent in the actual farmers operating the farms, and consequently the demand for improved farms is unusually high. That because of the foregoing factors, the land in issue in this proceeding will at the present time, on the open market, command a sales price of more than twice the value finally fixed in the prior redemption proceeding. That your petitioners are prepared to offer evidence of recent sales in the community in which this farm lies which will fully bear out the foregoing allegations."

Hearing on such petition was held before the Supervising Conciliation Commissioner on January 3, 1945. At such hearing, and over objection by the bankrupt, testimony was offered to the effect that the market value of this farm and of farm land in the immediate vicinity had increased between the spring of 1942 and November, 1944, by approximately 100 per cent. The Supervising Conciliation Commissioner, in a memorandum and order dated January 11, 1945, denied the petition of the creditors for an additional hearing to fix the present value of the land, and it is such order that is herein reviewed.

The Commissioner in his memorandum opinion based his conclusion mainly upon this Court's decision in the case of John A. Kauk, Bankruptcy No. 1165, in the United States District Court for the District of North Dakota. No opinion was written in the Kauk case, but the facts distinguish the two cases. In the Kauk case, the bankrupt, after having appealed from the decision of this Court increasing value, to the Circuit Court of Appeals, wherein the order of this Court was affirmed (see: Kauk v. Anderson, 8 Cir., 137 F.2d 331), attempted to obtain a modification of the value fixed by this Court, and affirmed by the Circuit Court, through asking for a new reappraisal or new hearing on value on the ground that the market value of the land had depreciated in the interim. He had filed no supersedeas bond pending his appeal. He failed to accompany his petition with affidavits to the effect that the value of the land had decreased, and failed to offer testimony to that effect. Furthermore, it is a matter of common knowledge of which courts will take judicial notice that the market value of farm lands increased instead of decreased during such period. The Commissioner to whom the petition was presented denied it, and such denial was sustained by this Court. There were other facts involved in the Kauk case which are not present in the instant one, and have no bearing herein. Accordingly, the Kauk decision could not be authority for determining this case.

This review involves the right of either party to a new reappraisal or a new hearing on value, upon proper showing, and subse-

quent to "a reasonable time" within which to redeem after a prior fixing of the fair and reasonable market value. The Act itself is not helpful. It provides only:

"Provided: That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion, set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, * * *." 11 U.S.C.A. § 203(s) (3).

The right of the secured creditors to a reappraisal or hearing on value as set forth above was exercised by them in their petition of April 1, 1942, resulting in the hearing of June 2, 1942, and finally, after review, culminating in this Court's order of March 26, 1943, fixing the value at $4000. By the Supervising Conciliation Commissioner's order of April 22, 1943, the bankrupt was given until July 15, 1943 (certainly a reasonable length of time), within which to comply with such order by paying into court the additional amount necessary to redeem. He having failed so to do, and having failed to protect himself by filing a supersedeas bond at the time he appealed to the Circuit Court of Appeals, and petitioned for writ of certiorari to the Supreme Court of the United States, lost the right to redeem at the value so fixed. He was given until July 15, 1943, within which to redeem at the value fixed by this Court's order of March 26, 1943. He chose not to do so but appealed from that order and failed to file a supersedeas bond. After July 15, 1943, his right to redeem at the value fixed was extinguished, particularly in the face of a showing that the market value had materially changed. Even if that were not true, the Supreme Court of the United States denied his petition for writ of certiorari on May 15, 1944, and this Court entered judgment on the mandate on May 26, 1944, so that, even if by any construction, he were entitled to a reasonable length of time to redeem at the value fixed, subsequent to the entry of such final judgment, May 26, 1944, such reasonable length of time had certainly expired by November 2, 1944, at which time the creditors filed their current petition for a new hearing on value, accompanied by evidence to the effect that the value had increased by approximately 100 per cent between such time and June 2, 1942, the date of the original hearing on value.

Inasmuch as this Court fixed the value of the land at $4000 on March 26, 1943, the question immediately arises as to how long a time the bankrupt had within which to redeem at that figure. Is the value so fixed to remain as a legal determination of the market value of the land for the entire statutory or stay period, or is it for only a reasonable length of time thereafter, such as fixed by the Commissioner's order of April 22, 1943, giving the bankrupt until July 15, 1943, to redeem at such figure? If the bankrupt fails to redeem within such allotted time, what are then the rights of the parties in the face of a showing that the market value had changed? Should a new reappraisal or a new rehearing on value be had?

As I have stated, the Bankruptcy Act itself is not clear, so that general principles of equity and fairness must govern. No case has been cited by either party which is directly in point, with the possible exception of the opinion of the 7th circuit court of Appeals in the case of Wright v. Union Central, 126 F.2d 92. The creditors cite such case as authority for the granting of their petition for a new hearing on value, and insist that the facts in such case are identical with those here involved. I cannot find, after a consideration of the Wright case, that the facts therein are identical with these, in that it is not clear to me whether one reappraisal or hearing on value had been held prior to the one granted by such decision. Rather am I inclined to believe from a reading of that opinion and a reading of the opinion of the Supreme Court on the same case, antedating the Circuit Court's opinion (Wright v. Union Central, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184) that there had been only the first appraisal provided for in the Act, and that the bankrupt was attempting to redeem at the value fixed by such appraisal, claiming that the Supreme Court's opinion prevented the creditors from exercising their statutory right to a reappraisal or hearing on value. The Circuit Court upheld the creditor's right to such reappraisal or hearing on value, concluding that the Supreme Court's opinion did not fix the value at which the land could be redeemed, but merely decided the question involved in that case, that is, the right of a bankrupt to redeem at the value fixed by the

Court within a reasonable time, as against the creditor's right to a public sale of the mortgaged property. Some assistance can be found, however, in the Circuit Court's opinion in the Wright case:

"Two questions involving appraisement of a debtor's property, under said section, are involved. They are: (1) *Upon a proper fact disclosure, may a second (or a third or a fourth) appraisal of a farmer-debtor's property be had under Sec. 75, sub. s(3)?* (2) Under the facts in this case, where the Supreme Court has ruled on appellant's right to redeem, at said $6,000 appraisal, may there be a reappraisal and a value of $10,832 accepted as the basis of redemption?" (Emphasis supplied.) In re Wright, 7 Cir., 126 F.2d 92, 93.

"After the return of the mandate, creditor petitioned the District Court for a reappraisal of the property. Against debtor's protest, testimony was received. An appraisal of $10,832 was made. The amount of creditor's mortgage at that time exceeded $16,000.

"The doubt which provokes the present controversy is over the effect of the Supreme Court decree which gave the debtor the right to redeem. Did it also unchangeably fix the price at which redemption might be had? In other words, did the Supreme Court fix the amount at which debtor could redeem, at the sum of $6,000? Or, was he, or the creditor, entitled, upon a proper showing, to a reappraisement?

"Determination of these questions naturally divides itself into: (1) May there, under any circumstance, be a reappraisement? (2) If so, is the right to reappraisement in the instant case lost, or barred, by reason of the holding of the Supreme Court?

"Our conclusion as to the first query is that neither party is bound by the first appraisement. *The court, in the interest of justice, can, and should, make a reappraisement, if the facts warrant it. No express statutory authorization for a reappraisement would be necessary. It is inherent in equity principles. Moreover, we think the statute authorizes reappraisals.*" In re Wright, 7 Cir., 126 F.2d 92, 94. (Emphasis supplied.)

It will be noted that the Circuit Court concludes that, in the interests of justice, reappraisement should be made, and that no express statutory authorization is necessary. It should be further noted that the Circuit Court states that the statute authorizes *reappraisals,* from which it could reasonably be inferred that there should be no limitation to the number of appraisals or hearings on value "if the facts warrant it", or if the interests of justice so require. The Circuit Court further states, on page 95 of 126 F.2d:

"A fair construction of the statute would seem to permit of a change in appraisal, if the facts warrant or require it. And this is so regardless of who is helped or hurt by the reappraisement."

It seems to me that the showing made by the creditors as to the vast increase in the value of the property between June 2, 1942, and the present time, requires that the Court grant the petition, and that a new hearing on value should be had. The value fixed by this Court on March 26, 1943, was based upon evidence taken before the Supervising Conciliation Commissioner on June 2, 1942, approximately two and one-half years prior to the creditors' current petition. The bankrupt's attempt to redeem of November 16, 1944 was long after the expiration of any conceivably reasonable time for the bankrupt to have made redemption at the value so fixed. It seems to me that fairness to all parties requires the granting of a new hearing on value where there is substantial evidence to the effect that the value has either decreased or increased subsequent to the prior valuation hearing, and where the bankrupt has failed to redeem within a reasonable length of time therefrom.

I am not unmindful that this case has been greatly prolonged, that there has been expensive litigation such as reviews, appeals and petition for writ of certiorari. Nor am I unmindful of the fact that litigation must end sometime. It is only with the greatest reluctance that I come to the conclusion that general principles of justice and equity require a new hearing on value "regardless of who is helped or hurt" thereby. Furthermore, this Court must take judicial notice of the fact that the market value of lands in North Dakota has greatly increased in value during the past three years. Excellent crops, with excellent prices therefor, have created an excessive demand for farm land, with an accompanying rise in market value. To allow the bankrupt to redeem in 1945 at a 1942 value might be most unjust. The converse of the

situation may conceivably become true in the future, so that this and other Courts may hereafter be presented with petitions by bankrupts for rehearings on the ground that market values have greatly depreciated. Upon proper showing such petitions should be granted. The rule of fairness must work both ways.

Accordingly, the order of the Supervising Conciliation Commissioner, dated January 11, 1945, will be reversed and the petition of the creditors for a new hearing on value will be granted.

In view of all of the circumstances and the entire history of this case, the request of the secured creditors for the appointment of a special master for the purpose of holding the new hearing on value will be granted. Subsequent to such hearing the special master will submit his report, findings and conclusions to this Court for consideration.