### BEECHER v. LEAVENWORTH STATE BANK et al.

No. 12216.

United States Court of Appeals Ninth Circuit.

Sept. 14, 1950.

As Amended on Rehearing March 5, 1951.

1. 183 F.2d 515.

See also 184 F.2d 506.

S. P. Beecher, in pro. per.

Henry R. Newton, Spokane, Wash., for appellee Fed. Land Bank of Spokane.

C. R. Randall, Spokane, Wash., for appellee Leavenworth State Bank.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

Beecher appeals from an order of the district court entered on December 20, 1948, affirming orders of the conciliation commissioner fixing the value of Beecher's orchard properties for the purpose of determining the amount to be paid into court to effect a redemption under Section 75, sub. s(3) of the Bankruptcy Act[1] and denying Beecher's request for a continuance of the hearing at which the value was determined.

The hearing to determine value was held by the commissioner pursuant to the order of the district court terminating the stay of proceedings, which order terminating stay, we have affirmed. Beecher v. Leavenworth State Bank, 9 Cir., 184 F.2d 504.

The respective values of nine different portions of the orchard, as well as the value of the orchard as a whole, were determined on the basis of evidence submitted only by the creditors in a proceeding at which Beecher was absent and not represented by counsel. It is obviously to Beecher's advantage to have as low an estimate of value as the facts will warrant and that his presence at the hearing on value in person or by counsel, if he desire it, is essential to its fair determination. In this connection, Beecher well may have shown that the price of the product of the orchards for abnormal war years was very high and that the previous prices had been very much lower, and properly argued that the valuation of the orchard should not be based upon the peak of prices for their product. He also might have shown that the prices in the post-war years have returned to a lower figure. It is obvious that a principal factor in determining the value is the anticipated price for the orchards' products. In this connection, it appears that the commissioner's valuation

1. 11 U.S.C.A. § 203, sub. s(3).

of these same orchard lands in 1940, before the war price rise, was but $9,120, that is, but eighteen per cent of the valuation of $50,000 arrived at on the evidence of the creditors alone.

One of the errors assigned is the claimed abuse of the conciliation commissioner's discretion in refusing to continue the hearing on these separate fixings of value as prayed for by Beecher because of his illness.

The paramount importance of the hearing to fix the value for the purpose of redemption is apparent. For the farmer-debtor it determines, without an opportunity for reappraisal, Federal Farm Mortgage Corp. v. Paulsen, 9 Cir., 149 F.2d 897; Haun v. Second Alliance Trust Co., 9 Cir., 155 F.2d 618, the amount he must pay to redeem his property under a statute which the Supreme Court has held must be given an interpretation favorable to him. Wright v. Union Central Ins. Co., 311 U.S. 273, 275, 278, 61 S.Ct. 196, 85 L.Ed. 184. On March 29, 1948, the date the court decided to terminate the stay, Beecher petitioned for authority to employ an attorney to represent him in the remaining proceedings, of which the valuation of the orchards was the obvious next step, alleging his sickness and attaching a physician's certificate that he, Beecher, was recently discharged from the hospital and was very weak. The district court denied Beecher's request for an attorney. A layman could not be expected to repeat his petition for an attorney for the specific hearing on the orchards' value.

Beecher, a highly intelligent layman, was an aged man of 75 years. The hearing to fix the value of the property had been previously continued to May 26th on account of his illness. On May 21, 1948, five days before the hearing of May 26th, he filed with the conciliation commissioner a verified petition for a continuance with the certificate of a physician.

On May 22, 1948, he filed with the court a verified petition for the continuance with attached certificate of the same physician and one of another physician. Beecher's verified petition alleges he was suffering from an enlarged prostrate, the retained urine from which had caused an inflamma-tion of his kidney and urethal organs. The infection of such retained urine also affected both his heart action and his nervous system, causing at times such dizziness that he staggered. This condition caused such physical and mental fatigue, inability to concentrate under strain or stand long hours of mental or physical effort, as would be encountered in attempting to represent himself in court against skilled lawyers, unaided and alone, in handling such technical matters as would be encountered in the establishment of "market value."

That these are not mere self-serving statements of the aged affiant appears from the certificates of his two physicians. Dr. H. L. Hopkins' certificate fully supports Beecher's affidavit. It reads:

"Cascade Sanitarium, Leavenworth, Washington
5/19/48

"To Whom It May Concern

"I have been requested by Mr. Samuel P. Beecher, who has been under our care for the past months, to make a statement as to his physical condition.

"He complains of dizziness, Headaches, Malaise, urinary frequency and shortness of breath.

"We found him to be suffering from an infected bladder and Kidney Condition which has been caused by a prostrate growth which prevents him from properly emptying his bladder.

"These existing conditions produce a general weakening and toxic condition which affects him physically as well as mentally. The above conditions have also caused some heart trouble evidenced by an irregularity of his pulse.

"I have advised Mr. Beecher to avoid all possible exertion, physical as well as mental, to get himself in as good a physical condition as possible, so that he can have the condition corrected surgically in the near future.

"My findings have been substantiated by Dr. A. C. Ohman, a specialist in the field who examined Mr. Beecher on May 14, 1948, and reported by letter to me under date of May 17, 1948, a copy of which letter is hereunto attached.

"I certify that the statements made above as of my own knowledge are true, and as to the other matters which are therein stated on information or belief, and as to these other matters I believe them to be true.

"Signed 5/19/48 H. L. Hopkins, M.D."

Dr. Ohman's certificate referred to above sustains the diagnosis of Beecher's affliction.

Beecher learned that the hearing of May 26th had been completed on that day in his absence. The conciliation commissioner's docket shows that Beecher filed, on May 28, his petition for a medical examination by a qualified specialist of his physical and mental condition, pursuant to the then Rule 35 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Despite Beecher's uncontradicted good faith thus shown, the conciliation commissioner, on June 1, 1948, entered the orders here appealed from denying the continuance and fixing the redeemable value of the orchards. The only evidence of his condition at the time of the hearing relied upon by the commissioner for his order denying the continuance is that, over a month previous to May 26, Beecher had made three train trips to Seattle and studied his case in a law library and made extensive notes; and at about the same time had offered to show the commissioner over his orchard in a rainstorm; had taken two men over his house from basement to second story, that is, up two flights of stairs; and that in the month prior to the motion for continuance he had been able to typewrite several documents filed in the proceeding.

Concerning the testimony of Beecher's condition a month before the valuation hearing, we cannot see its relevance as to the effect of the urinary inflammation on May 26, particularly since that earlier testimony was accompanied by evidence of Beecher's illness which led to the extension *then* granted to May 26, the commissioner

stating that he gave Beecher the benefit of a doubt as to his condition.

Evidence of Beecher's condition at such earlier dates is of no value in the face of the physician's certificate and Beecher's that on May 26 he could not stand the strain of the concentrated mental and nervous effort of a courtroom proceeding to determine the value of nine parcels of land, especially when the values arrived at in large measure determined whether Beecher could save his farm, and in which proceeding Beecher, a layman, would be opposed by attorneys for various creditors.

An aged man afflicted with such a bladder and prostrate poisoning and infection well may be able, without undue nervous pressure, to make up an account or file a pleading contesting a motion to terminate the stay. However, as seen, participation in the courtroom controversy over the final determination of the amount he must pay to redeem his property is something entirely different. We think the conciliation commissioner erred in not granting the continuance, and reverse the parts of the court's order affirming the orders of the commissioner denying the continuance and fixing the value of the orchard.

On the question of the date as of which the property is to be reappraised or the value fixed on the basis of evidence taken at a hearing, appellees contend that it should be as of the date of the termination of the stay and not the date of a later hearing or reappraisal. They offer no controlling authority for this contention[2] and the decisions, although not entirely clear, seem to the contrary. See Chaney v. Stover, 4 Cir., 158 F.2d 604 on remand, In re Chaney, D.C., 76 F.Supp. 911, affirmed Chaney v. Stover, 4 Cir., 167 F.2d 471; In re Wright, 7 Cir., 126 F.2d 92; Wolfheim v. South Dakota, 8 Cir., 150 F.2d 1005; Parker v. United States, 10 Cir., 184 F.2d 960.

If the property be not redeemed by the debtor, the realization to the creditors on its

---

2. Here Beecher had made his motion for a reappraisal before the termination of the stay and the situation therefore differs from those considered in Federal Farm Mortgage Corp. v. Paulsen, 9 Cir., 149 F.2d 897 and Haun v. Second Alliance Trust Co., 9 Cir., 155 F.2d 618.

452

sale will be much nearer the valuation of a recent date than that of, say, here two years before on the date of the termination of the stay, and will be exactly the same as they would realize if a high value is fixed for redemption purposes. This is so because presumably on such a subsequent sale no one would offer more for the property than it is worth at the time of the sale. Farmer debtor proceedings under § 75 are intended to discharge the obligations of the debtor by payment of the claims against him and although secured creditors may purchase at the sale and receive credit for the indebtedness of the debtor in satisfaction of the purchase price, Wright v. Union Central Ins. Co., 311 U.S. 273, 281, 61 S.Ct. 196, 85 L. Ed. 184, they have no special right to acquire the debtor's farm as distinguished from the proceeds realized from its sale.

■ We can see no advantage to the creditors in having the value set as of the earlier date. We hold that the value of the property should be determined as of the date of the hearing to determine value or the date of reappraisal whichever method is used.

Beecher assigns error in the fixing of the amount he is to pay to redeem the orchard properties. After fixing the value of different portions of the properties, the order of June 1, 1948, provides:

"It is further ordered, that to effect a redemption Bankrupt shall pay into Court as provided by Section 75(s) (3) of the Bankruptcy Act, the aforesaid sums, respectively, or such portion thereof as is sufficient to pay all claims filed and approved, including all such claims filed for taxes and assessments levied by Chelan County, or by any Irrigation District or Agency."

■ Beecher contends that, as to the possible lesser sums to discharge the claims, the above provision is indefinite in that it may require him to pay sums not due from him. It may include items accruing during the bankruptcy payable out of the income from the orchard's product. We think that such an order should first make clear the exact amount of the lesser sum, if it exist, and not leave the farmer debtor in the area of doubt as to what that lesser amount is, to be determined by him in the time allowed for redemption. We think also the order should state the specific sum for which each parcel of property should be redeemed, making it clear that if it be decided that all the orchards must be redeemed as a single parcel, a single sum shall be paid for it.

Beecher assigns error in the time limitation of the orders:

"It is further ordered that Ninety (90) days from the date of the entry of this Order is a reasonable time within which to effect a redemption, and the Bankrupt is directed to redeem within such time if he desires so to redeem."

■ We cannot say that this time is unreasonable. However, we think that whatever time is allowed should commence after the court has determined the amount, if any, of the resources under the control of the court available to Beecher for the purpose of redemption. He should not be in doubt as to this in the period in which he may be seeking a loan on the property, to raise funds to aid in redemption.

We express no opinion as to Beecher's other contentions as to the validity of the order fixing value for the purpose of redemption.

The order of the district court here appealed from also affirmed other orders of the conciliation commissioner entered on June 1, 1948. The court's order, in so far as it dealt with these other orders, is affirmed. Beecher is liable for one third the cost of the appeal, the balance being chargeable to appellees.