**In re PARADISE BOAT LEASING CORP., Debtor.**

**BAMERICAL MORTGAGE & FINANCE COMPANY, INC., Plaintiff,**

v.

**PARADISE BOAT LEASING CORP., Defendant.**

**Bankruptcy No. B–79–00007.**

United States Bankruptcy Court, Virgin Islands, D. St. Thomas and St. John.

Dec. 26, 1979.

Frederick D. Rosenberg, Charlotte Amalie, St. Thomas, V. I., Roberto Santana, San Juan, P. R., for plaintiff.

Reginald J. Barney, San Juan, P. R., Arnold M. Selke, Charlotte Amalie, St. Thomas, V. I., for debtor.

## FINDINGS AND ORDER

WILLIAM T. HOLMES, Bankruptcy Judge.

On October 23, 1979, Bamerical Mortgage & Finance Company, Inc., a lending corporation doing business in Puerto Rico, filed an application for relief from the automatic stay imposed by the Bankruptcy Code (11 U.S.C. § 362), which prevents it from enforcing a lien against the yacht *Solo.*

There was a preliminary hearing early in November and two other hearings from which the following facts are apparent: Bamerical has a valid lien filed in Puerto Rico on a 1967 loan of $161,400 made in Puerto Rico secured by the 45–foot Chris-Craft yacht *Solo,* owned by the Virgin Islands corporation, Paradise Boat Leasing Corp. The balance on the loan is about $70,000. Apparently *Solo* for sometime has been cruising the Caribbean either for charter purposes or the personal pleasure of the president of Paradise, even though the security agreement prohibited the *Solo* from leaving Puerto Rico. Bamerical whose loan

was in default found *Solo* in St. Thomas at a marina and started an in rem proceeding in the U.S. District Court. Paradise thereupon filed this reorganization proceeding under Chapter 11 of Title 11 of the Code (11 U.S.C. Chapter 11). The reorganization petition shows that the only asset of Paradise is the *Solo*, that there is a valid lien against the vessel for $71,000 and that there are claims chiefly for marina charges etc., for about $3,000. Delinquent current payments due Bamerical are approximately $12,000.

Paradise took the position that since it had an equity in the *Solo*, the application to lift the stay must be denied. Paradise argued it was entitled under the Code (presumably 11 U.S.C. § 1121(b)) to 120 days to file a plan of reorganization, and presumably the stay should continue in effect for the 120–day period. Clearly Debtor hoped to get Court permission to charter the *Solo* to others during this 120 days and use charter receipts to pay off or pay down Bamerical. I have shortened Paradise's time to file a plan of reorganization. The plan of reorganization dated December 12, 1979 provides for payments of $1,000 a month to Bamerical for 6 months and thereafter $1,500 a month. All of this is to be done by charter fees realized from the use of the *Solo*.

It will benefit neither the Debtor nor the secured creditor to have the *Solo* sit in a marina and run up charges. The *Solo* can be used by the Debtor if, and only if, there is adequate protection of the interests of Bamerical. Under 11 U.S.C. § 362(d) I am directed to grant Bamerical relief from the stay

"for cause, including the lack of adequate protection of an interest in property * * *".

Again, under 11 U.S.C. § 363(e) at the request of a party who has a security interest in property to be used or proposed to be used by a debtor,

" * * * the court shall prohibit or condition such use * * * as is necessary to provide adequate protection of such interest * * *".

Thus the issue here is can Paradise furnish "adequate protection" to Bamerical so that the Court can continue the automatic stay and permit Paradise to use the *Solo*. If Paradise cannot provide adequate protection, the stay should be lifted. Paradise concededly has an equity in the *Solo* but where the secured asset is a boat, equity alone is not adequate protection to the lienholder.

In determining what constitutes adequate protection, I must look to the statute itself and to its legislative history. Section 361 of Title 11 provides three non-exclusive examples of how adequate protection may be provided if secured property is to be used by a debtor: (1) By cash payments equivalent to decreases in value. An example would be a use of warehouse where cash payments would protect the secured creditor against depreciation of the building and equipment; (2) By granting an additional or replacement lien on other property; and (3) Possible compensation to the creditor by way of a claim for administration expenses.

Because of the nature of the secured asset no one of these three examples will work here. The general test when adequate protection is required is that the Court must grant such relief as will result in the realization by the secured creditor "*of the indubitable equivalent*" of his interest in the property. (11 U.S.C. § 361(3)) This means that the Debtor to keep the stay must provide that the secured creditor will be sure of being paid.

Also "indubitable equivalent" means that the payments to the secured creditor must be at least as good as provided by his agreement, a test the plan does not meet.

The legislative history reinforces the conclusion that secured creditors' rights are to be protected, as shown by the following quotation from Senate Report No. 95–989, 95 Cong. 2nd Sess. (1978) 49, 53, 54, U.S. Code Cong. & Admin.News, pp. 5787, 5835;

"The concept of adequate protection is derived from the fifth amendment protection of property interests as enunciated by the Supreme Court. See *Wright v. Union Central Life Ins. Co.*, [311] 331

U.S. 273 [61 S.Ct. 196, 85 L.Ed. 184] (1940); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 [55 S.Ct. 854, 79 L.Ed. 1593] (1935).

\* \* \* \* \* \*

. . . It is not, however, intended to be confined strictly to the constitutional requirement. This section and the concept of adequate protection are based as much on policy grounds as on constitutional grounds. *Secured creditors should not be deprived of the benefit of their bargain.* There may be situations in bankruptcy wher[e] giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the policy of the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest where such steps are a necessary part of the rehabilitative process." (Emphasis supplied.)

This is not a situation where giving this secured creditor the right to his bargain, namely to foreclose on default, is impossible or seriously detrimental to the policy of the bankruptcy laws. It is highly doubtful whether there is a business to rehabilitate. The whole reorganization proceeding appears to be an effort to forestall one particular creditor. The testimony shows that the activities of the Debtor were conducted in a most unbusinesslike manner. Paradise never filed any franchise or corporate reports with the Virgin Islands Government and accordingly lacks status to sue on contract actions in local courts; it never filed any income tax returns. Indeed, Paradise never even bothered to secure a tax identification number. When I asked the president of Paradise, who testified under oath, whether Paradise had ever made money from claimed extensive chartering activities, he answered that he did not know. I don't think it is the purpose or policy of the Bankruptcy Code to rush to reorganize businesses conducted in this manner.

I hesitate to entrust to the use of Paradise an asset so easily destroyed as a charter boat. A pleasure vessel is subject at all times, even at anchor, to the perils of the sea. It appears that if there is a loss of the vessel the insurance on the Solo will not protect Bamerical if the loss is due to Paradise's own negligence.

An application to use the *Solo* type of vessel is an easy case in which to determine that the adequate protection standards of the Bankruptcy Code have not been met. Probably use would not have been allowed under the old Bankruptcy Act. The license to use collateral is I believe more limited under the Code than under the case law and the rules applicable under the old Bankruptcy Act. The statutory test of "indubitable equivalent" that now must be met before there can be a use of secured property by a debtor, derive from words used by Judge Learned Hand in *Matter of Murel Holding Corp.*, 75 F.2d 941 (2 Cir. 1935). "Indubitable equivalent" stresses the protection of the secured creditor. The need of a debtor to use a creditor's property seemed to be the determining factor in many of the cases under the Bankruptcy Act. Under this language of the Code, even if the Debtor needs the secured property for reorganization he may not use it unless there is no doubt that what the secured creditor is to get, is equal in all particulars to rights the creditor may have to surrender. Paradise has not come near meeting this test.

Debtor argues that it was granted at the hearing on December 10, 1979, 30 days to furnish adequate protection and that the stay should not be lifted until it has had until January 10, 1980 to attempt to furnish such protection. I have no record or recollection of any such concession. Nevertheless, the Order protects Debtor by preventing a sale of the vessel until after January 10, 1980, and Debtor may move for reconsideration if it thinks it can furnish adequate protection by January 10, 1980. To extend the stay would be contrary to the policy of Section 362(e) of the Code (11 U.S.C. § 362(e)) which implies that after objection the stay should not be continued unless it appears the debtor will prevail.

Pursuant to the finding that Debtor has proposed no means whereby Bamerical can be adequately protected, it is

ORDERED that,

(1) Bamerical Mortgage & Finance Co., Inc. (Bamerical) may start an action to enforce its lien against the vessel *Solo,* owned by Debtor, Paradise Boat Leasing Corp., in any court in the U. S. Virgin Islands, provided that no sale of such vessel shall be held prior to January 11, 1980; and

(2) Any excess received on the sale or other disposition of the *Solo* in such action over the lien held by Bamerical must be deposited with the Clerk of this Bankruptcy Court for the purposes of this proceeding.