## In re CARBONE COMPANIES, INC., et al., Debtors.

### Nos. 08–16786, 08–16788.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Oct. 31, 2008.

---

Harry W. Greenfield, Jeffrey C. Toole, Cleveland, OH, for Debtors.

Richard A. Baumgart, Dettelbach, Sicherman & Baumgart, Cleveland, OH, for Creditor Committee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Before the Court is the motion of Carbone Companies, Inc. fka R.P. Carbone Company ("Carbone Companies" or "R.P. Carbone") and Carbone Properties, LLC ("Carbone Properties") (collectively, the "Debtors") for authorization to use cash collateral pursuant to § 363(c)(2)(B) of the Bankruptcy Code. 11 U.S.C. § 363(c)(2)(B). An objection to such relief was filed by the secured lender, Fifth Third Bank (the "Bank") on the basis that it is not adequately protected. The Official Committee of Unsecured Creditors (the "Committee") also filed an objection.

This Court acquires core matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2), 28 U.S.C. § 1334 and General Order No. 84 of the District.

Upon conclusion of a duly noticed evidentiary hearing, a review of the record, and consideration of the arguments of counsel, the following findings of fact and conclusions of law are hereby rendered.

Carbone Companies is in the construction business, with offices located in Cleveland, Ohio. Carbone Properties is a holding company and owns many other affiliated entities either directly or indirectly, including Carbone Properties of Audubon, LLC ("Carbone Audubon").[1]

Presently, Carbone Companies has 13 ongoing projects and an additional six projects that are pending startup. Its main clients are the Ohio School Facilities Commission ("OSFC") and McTech Corporation ("McTech").

On August 1, 2004, R.P. Carbone obtained a loan from the Bank pursuant to a credit agreement (subsequently amended on May 3, 2006) in the principal amount of $15,000,000 ("Loan"). In return, the Bank received a security interest, pursuant to a security agreement dated August 1, 2004 (subsequently amended on May 3, 2006), in all accounts, inventory, equipment, general intangibles, investment property, negotiable instruments, personal property and other assets. The Loan was evidenced by a promissory note, dated August 1, 2004 (subsequently amended on May 3, 2006), executed by R.P. Carbone and guaranteed by Carbone Properties, among others. The Bank perfected its security interest with its filing of a financing statement on August 3, 2004 and a subsequent amended financing statement on April 22, 2008.

According to the Bank, R.P. Carbone defaulted on the Loan on June 17, 2008. Debtors allege that after they defaulted on the Loan, the Bank agreed to a forbearance and proposed a budget for Debtors. When Debtors made several changes to the budget, the Bank ceased negotiations and swept Debtors' accounts. Debtors allege that after the Bank swept their accounts, Debtors were unable to pay their operating expenses, including payroll and taxes. On August 1, 2008, the Bank obtained a judgment in the Cuyahoga County Court of Common Pleas against Debtors

---

1. Carbone Properties is the sole member of Carbone Hotel Properties, LLC ("Carbone Hotel"), which is the sole member of Carbone Audubon. According to the Bank, Carbone Properties assigned its interest in Carbone Hotel, which assigned its interest in Carbone Audubon, to the Bank on May 3, 2006 as additional security for the Loan.

and other related entities in the amount of $14,981,440, with default interest of $304,623.02, late charges of $749,072.03, and interest of $4,993.82 per day after July 31, 2008 ("Judgment"). Subsequently, on September 3, 2008, the Bank notified Carbone Companies in writing that it was executing its Judgment.

The next day, Debtors filed their respective Chapter 11 petitions and continued to operate their businesses as Debtors in Possession ("DIP"). Debtors' Schedules A—H were filed on October 10, 2008. Carbone Companies listed the Bank as its only secured creditor with a claim of $14,198,584.86 and with its assets valued at $13,003,238.46. It is undisputed that the Bank is undersecured. Meanwhile, Carbone Properties listed the Bank as a secured creditor of Carbone Properties' interest in Carbone Hotel, of which value is unknown. To date, the Bank has not filed a proof of claim in either Debtor's bankruptcy case.

* *

The issue before this Court is whether the Debtors have satisfied the required elements for use of cash collateral under § 363(c)(2)(B) of the Bankruptcy Code.

* * *

Debtors seek a final order authorizing their use of cash collateral in order to continue their business operations as DIPs. Following an earlier preliminary hearing, Debtors were granted limited use of cash collateral, while the Bank received replacement liens on the Debtors' postpetition assets.[2] The present motion requests final court approval for continued use of cash collateral under § 363(c)(2)(B), since the Bank has refused consent to continued use of its cash collateral.

The Bank opposes the relief sought on the basis that it is not adequately protected. The Bank also alleged, in its objection to Debtors' limited use of cash collateral, that the Debtors were maintaining an inadequate cash management system, that Debtors' budgets were excessive, and that Debtors made improper transfers to insiders and affiliates. The Bank continued to express these concerns at the final hearing for use of cash collateral. As a remedy for the inadequate protection of its security interest, the Bank proposed liens on potential avoidance actions that the Debtors may bring in their bankruptcy proceedings.

The Committee initially filed an objection to Debtors' use of cash collateral on the basis of inadequate time to review the record and to certain aspects of the Debtors' initial budget. At the final hearing on the motion, however, it appears that the Committee's primary concern is that the Debtors' amended budget has not been sufficiently reduced.

* * * * * *

Use of cash collateral is governed by § 363 of the Bankruptcy Code.

In pertinent part, § 363(c)(2) provides:

The trustee may not use, sell, or lease cash collateral under paragraph (1) of this

subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

*11 U.S.C § 363(c)(2).*

In pertinent part, § 363(e) provides:

---

**2.** This Court's order, dated September 12, 2008, authorized use of cash collateral for 15 days, which use was subsequently extended, by an order dated September 25, 2008, to the date this Court renders a final order on use of cash collateral.

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest ...

*11 U.S.C. § 363(e).*

In pertinent part, § 361 provides;

When adequate protection is required under section ... 363 ... of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the ... use, sale, or lease under section 363 of this title ... results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

*11 U.S.C. § 361.*

Cash collateral is defined in § 363(a) and provides:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

*11 U.S.C. § 363(a).*

A debtor requesting court approval to use cash collateral has the burden of proof as to the issue of "adequate protection." *11 U.S.C. § 363(p)(1).* Although "adequate protection" is not defined in the Code, § 361 provides illustrative examples of adequate protection, specifically that the debtor may give cash, additional or replacement liens, or other relief that will result in the indubitable equivalent of the objecting party's interest in such property. *11 U.S.C. § 361.* The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral. *In re Gasel Tranp. Lines, Inc.,* 326 B.R. 683 (6th Cir. BAP 2005). In other words, if the debtor's proposed protections do not adequately preserve the creditor's interest in the cash collateral as it existed on the petition filing date, then the creditor is not adequately protected. *Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.),* 780 F.2d 1339 (8th Cir.1985), Thusly, the Court may not authorize use of cash collateral without running afoul of the secured creditor's Fifth Amendment property right to a just compensation for a taking. *See, Wright v. Union Cent. Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940).

As noted by the court in *In re Briggs Transp. Co.:*

Th[e] statutory scheme [of section 361] indicates that adequate protection is intended to encompass a broad range

of creditor interests and does not mandate an interpretation of the creditors' interest as the whole of the economic bargain ... Although the concept of adequate protection is certainly intended to protect a creditor's interest in the collateral, it is clearly susceptible to differing applications over a wide range of fact situations.

780 F.2d at 1345.

Herein, the Debtors seek authorization to use cash collateral, over the objection of its undersecured lender, the Bank, which alleges it is not offered adequate protection on its collateral. It is unrefuted that the Bank holds a valid first lien position on all of the Debtors' assets.

■ In determining the outcome of this matter, it is incumbent upon the movant, Debtors, to carry the burden of proof. Such burden must be established by a preponderance of the evidence standard. Once the movant has established a prima facie basis for the relief sought, then the burden of going forward with evidence to controvert the relief sought is reposed in the objecting party, the Bank.

■ Herein the testimonies of Michael Scaparotti ("Mr.Scaparotti"), the acting President of Carbone Companies, and Laurence Goddard ("Mr.Goddard"), an expert turnaround management specialist and President of a turnaround consulting and investment banking firm, The Parkland Group, Inc. ("Parkland Group"), were both credible.

Mr. Goddard testified that the net cash flow projections for the ensuing quarter, October to December 2008, reflect positive increases for Carbone Companies as opposed to negative cash flows. (Goddard, Direct; Debtors' Exh. C). The net operating cash flow begins at $108,803 prepetition and increases to $196,630 by December 31, 2008. (Goddard, Direct; Exh. C). Likewise, the Debtors' accounts receivable will increase over the same period. (Goddard, Direct; Exh. C). The eligible accounts receivable begins at $453,432 prepetition and increases to $515,255 by December 31, 2008. (Exh. C). In sum, the cash collateral (cash and accounts receivable) will increase during the next three months, from October to December 2008. Such an exhibition indicates adequate protection of the Bank's cash collateral. Further, Mr. Goddard opines that going forward, Debtors will be profitable. (Goddard, Direct). As such, the Bank is adequately protected because its cash collateral will not diminish during Debtors' proposed use; rather, it will increase because of Debtors' use. Mr. Goddard's testimony was not controverted by any persuasive evidence to the contrary.

In support of the Debtors' positive cash flow projections, Debtors exhibited a report comparing its projected budget to its actual budget for the previous month, September 2008. See, Exh. B. Debtors projected a negative net operating cash flow in the amount of $9,087, but the actual cash flow was a positive $74,448. (Goddard, Direct; Exh. B). The eligible accounts receivable was $515,650, higher than the projected $420,025 figure. (Goddard, Direct; Exh. B). Expenses were anticipated at $656,095, but the actual expenses incurred were significantly less, at $497,679. (Goddard, Direct; Exh. B). Debtors' cash balance for September 30, 2008 was estimated at $14,399, rather than the $162,472 that became the actual cash balance. (Exh. B). In sum, Debtors had more cash and accounts receivable and less expenses than projected for the month of September, meaning Debtors exceeded their projections. (Exh, B). The Bank did not offer any persuasive evidence to refute the Debtors' budget for September.

As further adequate protection for the Bank's cash collateral, it is well understood that the Bank was entitled to postpetition replacement liens on its collateral, to the extent there was any diminution in its cash collateral. In support thereof, Mr. Scaparotti testified to the fact that the Debtors' main clients, OSFC and McTech, have indicated they would continue to do business with Debtors notwithstanding Debtors' pending bankruptcy proceedings. (Scaparotti, Direct).

Collectively, these findings clearly demonstrate that the Bank has not suffered any diminution of its security interest in the cash collateral. Once a prima facie case is established, the objecting party must come forward with sufficient evidence to controvert that which was adduced by the moving party. Although the objecting Bank's counsel argued strenuously that the Bank was not adequately protected, arguments of counsel are not to be construed as evidence. To the extent it may be subsequently determined that there has been a diminution of the Bank's security interest in the cash collateral, presently such has not been proved by the requisite evidentiary standard of proof.

As partial support for its objection, the Bank alleged a diminution of Debtors' assets through a questionable transfer by McTech to an affiliate of the Debtor, Carbone Audubon, and another questionable transfer to a non-debtor third party, the law firm representing Carbone Audubon in its bankruptcy case in the Eastern District of Louisiana. Through testimony taken of McTech's chief financial officer ("CFO"), John George, it was not shown that the subject transfers by McTech involved any transfer of assets belonging to the Debtors. (George, Direct and Cross, Exh. 2). What was shown, and unrebutted by any evidence to the contrary, was McTech's transfer of certain of its own assets to third parties as an apparent favor to one Vincent Carbone, the former president of Carbone Companies. (Scaparotti, Rebuttal). Further, the transfers were authorized by McTech's CFO, upon approval of its President, Mark Perkins. (George, Direct and Cross, Exh. 2). Without more, such transfers of McTech's own assets cannot be found to have constituted any diminution of the Debtors' assets. The rebuttal testimony of Mr. Scaparotti evinced that the Debtors' billings to McTech, for services rendered by the Debtors on projects for McTech, were undeterred. (Scaparotti, Rebuttal). This testimony was not controverted by the Bank. In summary, no proof has been shown to demonstrate a decrease in Debtors' assets by virtue of the subject transfers acknowledged by McTech.

\*    \*    \*    \*    \*    \*

Accordingly, the Debtors' motion for final authorization to use cash collateral is hereby granted. The objection of Fifth Third Bank is overruled, upon this Court's determination that the Bank's cash collateral is adequately protected. The objection of the Official Committee of Unsecured Creditors is also overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.